**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TIGO ENERGY INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>SMA SOLAR TECHNOLOGY AMERICA LLC and SMA SOLAR TECHNOLOGY AG,<br><br>*Defendants.* | C.A. No. 22-915-GBW |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT SMA SOLAR
TECHNOLOGY AG'S MOTION TO DISMISS FOR INSUFFICIENT PROCESS,
INSUFFICIENT SERVICE OF PROCESS, LACK OF PERSONAL JURISDICTION,
<u>AND FAILURE TO STATE A CLAIM</u>**

OF COUNSEL:

Nicholas Brown
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1300
brownn@gtlaw.com

Jeffrey R. Colin
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
colinj@gtlaw.com

Benjamin J. Schladweiler (#4601)
Renée Mosley Delcollo (#6442)
GREENBERG TRAURIG, LLP
222 Delaware Ave., Suite 1600
Wilmington, DE 19801
Telephone: (302) 661-7000
schladweilerb@gtlaw.com
renee.delcollo@gtlaw.com

*Counsel for Plaintiff and Counterclaim
Defendant Tigo Energy Inc.*

Dated: April 20, 2023

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................................... 1

     A.   The Parties and Accused Products. ............................................................ 1

     B.   SMA America's Counterclaims Implicate SMA AG ................................. 2

     C.   Process and Service of Process. ................................................................. 2

III. LEGAL STANDARD ............................................................................................. 3

     A.   Process and Service of Process. ................................................................. 3

     B.   Personal Jurisdiction. ................................................................................. 4

     C.   Failure to State a Claim. ............................................................................. 5

IV.  ARGUMENT........................................................................................................... 5

     A.   Tigo's Process And Service of Process Was Proper. ................................. 5

     B.   This Court Has Personal Jurisdiction Over SMA AG. ............................... 6

          i.    Jurisdiction is Proper under the Delaware Long Arm Statute. ...................... 6

              1.   Jurisdiction Exists Under Delaware's Dual Jurisdiction Theory. ............... 6

              2.   Jurisdiction Under Subsection (c)(4) is also Proper ................................. 7

              3.   SMA AG is Subject to this Court's Jurisdiction Through its Agent, SMA America. ................................................................................................. 9

          ii.   Personal Jurisdiction is also Proper Under Federal Rule 4(k)(2). ............... 12

          iii.  Exercising Personal Jurisdiction Comports with Due Process. ................... 13

              1.   SMA AG has the Requisite Minimum Contacts with Delaware and the United States. ........................................................................................ 13

              2.   The Exercise of Personal Jurisdiction over SMA AG does Not Offend Traditional Notions of Fair Play and Substantial Justice.......................... 15

          iv.   In the Alternative, Tigo Should be Permitted to take to Jurisdictional Discovery. ................................................................................................. 17

     C.   Tigo's Complaint Allegations Are Sufficient to Establish a Cause of Action......................................................................................................... 18

V.   CONCLUSION ..................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Sys. v. Biolitec, Inc.*,
604 F. Supp. 2d 325 (D. Mass. 2009) ...................................................................3, 6

*bioMérieux, S.A. v. Hologic, Inc.*,
2018 WL 4647483 (D. Del. Sept. 26, 2018) ..................................................... *passim*

*Boone v. Oy Partek Ab*,
724 A.2d 1150 (Del. Super. Ct. 1997) .................................................................5, 6

*Bos. Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*,
2020 WL 229993 (D. Del. Jan. 15, 2020)......................................................... *passim*

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*,
2006 U.S. Dist. LEXIS 45762 (D.N.J. Apr. 24, 2006) ...............................................3

*Cephalon, Inc. v. Watson Pharms., Inc.*,
629 F. Supp. 2d 338 (D. Del. 2009).....................................................................11

*Diaz Cardona v. Hitachi Koki Co.*,
2019 WL 449698 (Del. Super. Ct. Feb. 5, 2019).......................................................6

*Energy Transp. Grp., Inc. v William Demant Holding A/S*,
2008 WL 78748 (D. Del. Jan. 4, 2008).............................................................11, 17

*Enzo Life Scis., Inc. v. Hologic Inc.*,
2018 WL 4660355 (D. Del. Sept. 26, 2018) ..................................................... *passim*

*Genzyme Corp. v. Novartis Gene Therapies, Inc.*,
2023 WL 1965090 (D. Del. Feb. 13, 2023) .............................................................13

*Int'l Bus. Machines Corp. v. Rakuten, Inc.*,
No. 21-461-GBW, 2022 WL 17848779 (D. Del. Dec. 22, 2022).................................. *passim*

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
2019 WL 330515 (D. Del. Jan. 25, 2019)..........................................................17, 18

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012)............................................................................12

*Myrtle v. Graham*,
2011 WL 446397 (E.D. La. Feb. 4, 2011) ............................................................3, 6

*N. Star Innovations, Inc. v. Toshiba Corp.*,
No. 16-115-LPS-CJB, 2016 WL 7107230 (D. Del. Dec. 6, 2016)..........................................20

*Nalco Co. v. Chem Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)..................................................................................................5

*Petmas Inv'rs Ltd. v. Sameiet Holbergs Gate 19*,
2014 U.S. Dist. LEXIS 168780 (D.N.J. Nov. 18, 2014)..............................................................3

*Power Integrations, Inc. v. BCD Semiconductor Corp.*,
547 F. Supp. 2d 365 (D. Del. 2008).......................................................................................6, 8

*Res. Trade Fin., Inc. v. PMI Alloys, LLC*,
2002 WL 1836818 (S.D.N.Y. Aug. 12, 2002)........................................................................3, 6

*Sinox Co. Ltd. v. Yifeng Mfg. Co. Ltd.*,
2023 WL 2769440 (W.D. Tex. Mar. 22, 2023) .......................................................................13

*SMA Solar Technology AG v. SMA Alliance, Inc.*,
No. 17-10-GMS (D. Del.) ........................................................................................................16

*SMA Solar Technology AG v. Sunny Call LLC*,
No. 18-309-LPS (D. Del.)........................................................................................................16

*Telecomm Innovations, LLC v. Ricoh Company*, *Ltd.*,
966 F. Supp. 2d 390 (D. Del. 2013).........................................................................................19

*UCB, Inc. v. Accord Healthcare, Inc.*,
201 F. Supp. 3d 491 (D. Del. 2016)...........................................................................................7

**Statutes**

10 *Del. C.* § 3104(c)...............................................................................................................5, 9

**Other Authorities**

Federal Rule of Civil Procedure 4 ...................................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................5

## I.    INTRODUCTION

SMA Solar Technology AG's ("SMA AG") motion to dismiss should be denied in its entirety. As explained below, SMA AG's service of process arguments are meritless as service was properly effectuated upon it through the Hague Convention as certified by the German Central Authority. Tigo's Amended Complaint establishes a *prima facie* case of personal jurisdiction over SMA AG because it alleges that SMA AG has directly and/or indirectly infringed the Asserted Patents in Delaware and has significant contacts within Delaware and the United States. Personal jurisdiction is further confirmed by discovery provided to date by SMA America. Similarly, the Amended Complaint states a claim because it alleges direct and/or indirect infringement of the Asserted Patents by SMA AG.

## II.    STATEMENT OF FACTS

### A.  The Parties and Accused Products.

Plaintiff Tigo develops and sells products for the solar industry and has been awarded numerous patents, including U.S. Patent Nos. 8,933,321, 9,584,021, 9,966,848, 10,256,770, and 10,333,405 (collectively, the "Asserted Patents"). (D.I. 20, ¶16.)

SMA AG and its subsidiary SMA Solar Technology America LLC ("SMA America") compete with  Tigo, selling products which infringe one or more claims of the Asserted Patents: the JMS-F rapid shutdown device and/or SMA inverters which employ "SunSpec rapid shutdown technology" and are specifically designed and advertised to be used in combination with a rapid shutdown device, including the JMS-F rapid shutdown device; and all other similar SMA rapid shutdown technology products (collectively, the "Accused Products"). (*Id.*, ¶10.) SMA AG develops the products, provides technical documentation for the Accused Products, including user guides and installation manuals, that induce infringement of the Asserted Patents, and SMA AG

1

further warrants and provides services for the Accused Products in the United States, including software, firmware, and user applications.  (*Id.*, ¶¶33, 48, Ex. 9.)

### B.  SMA America's Counterclaims Implicate SMA AG

SMA America's original Counterclaims contained multiple allegations concerning SMA AG's involvement in this dispute. (*See* D.I. 10, ¶¶137-142, 370-71, Ex. A, and Ex. C). Tigo named SMA AG as a defendant in its Amended Complaint (D.I. 16). SMA America then amended its Counterclaims (D.I. 20) and again included multiple allegations implicating SMA AG: ¶¶147-152 (alleging agency relationship between SMA AG and SMA America), ¶398-99 (alleging harm to other SMA entities "around the world"), Ex. A at 3 ("SMA Group" is a "global market leader for solar inverters," is headquartered in Germany, and is "represented in 20 countries"), Ex. C at 2 (press release quoting Nick Morbach, an executive of SMA AG).  Other evidence confirms the relationship between SMA AG and SMA America, and SMA AG's infringing acts.  For example, SMA AG obtained and holds the SunSpec certifications for the Accused Products that form the basis for SMA America's counterclaims. Exs. A-C of the Declaration of Benjamin J. Schladweiler. Additionally, SMA AG is the owner of the "SMA Solar Technology" trademark, the trademarks of the Accused Products, copyright of the SMA America website, and provides all technical materials for the Accused Products, all of which are used by SMA America throughout its U.S. website. *See, e.g.*, Exs. D-I.

### C.  Process and Service of Process.

On September 30, 2022, SMA AG's counsel, who also represents SMA America in this litigation, declined Tigo's request to accept service of the Amended Complaint. *See* Ex. J.  On November 10, 2022, Tigo proposed a stipulation dismissing SMA AG from the action if it agreed to provide certain stipulations regarding its actions and to provide discovery as if it were a party,

2

and SMA AG did not accept.  Ex. K.  Tigo initiated service upon SMA AG under the Hague Convention on November 10, 2022. Tigo's first Hague request, however, was denied by the German Central Authority.  Tigo resubmitted its Hague request on February 14, 2023, which was approved by the Central Authority.

The German Central Authority certified that service of process was effectuated upon SMA AG on March 2, 2023. (D.I. 40.) Tigo received the notice of service on April 3, 2023. On April 12, 2023, Tigo lodged with the Court the original copy of the Proof of Service upon SMA AG. (*Id.*)

## III.    LEGAL STANDARD

### A.  Process and Service of Process.

Federal Rule of Civil Procedure 4(f) permits service of process on an international defendant through the Hague Convention. *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, 2006 U.S. Dist. LEXIS 45762, at *7 (D.N.J. Apr. 24, 2006). Article 2 of the Convention requires all signatory nations to designate a "Central Authority" to accept requests of service. Art. 2; *id.* at *8. Under Article 4 of the Convention, the central authority receiving service must inform the foreign party if its service failed to comply with the formalities of service. *Petmas Inv'rs Ltd. v. Sameiet Holbergs Gate 19*, 2014 U.S. Dist. LEXIS 168780, at *13 (D.N.J. Nov. 18, 2014).

Courts have held that the Central Authority's return of a completed certificate of service is *prima facie* evidence that service complied with the Hague Convention, and, as a result, complied with the Federal Rules of Civil Procedure, which can only be overcome by showing a lack of actual notice or prejudice. *Am. Med. Sys. v. Biolitec, Inc.*, 604 F. Supp. 2d 325, 331 (D. Mass. 2009); *Res. Trade Fin., Inc. v. PMI Alloys, LLC*, 2002 WL 1836818, at *4 (S.D.N.Y. Aug. 12, 2002); *Myrtle v. Graham*, 2011 WL 446397, at *2 (E.D. La. Feb. 4, 2011).

3

## B. **Personal Jurisdiction.**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction. *bioMérieux, S.A. v. Hologic, Inc.*, 2018 WL 4647483, at *2 (D. Del. Sept. 26, 2018). If no evidentiary hearing has been held, a plaintiff "need only establish a *prima facie* case of personal jurisdiction." *Id.* A plaintiff "presents a *prima facie* case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Id.* On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Enzo Life Scis., Inc. v. Hologic Inc.*, 2018 WL 4660355, at *1 (D. Del. Sept. 26, 2018).

"Determining the existence of personal jurisdiction requires a two-part analysis–one statutory and one constitutional." *Id.* "First, the Court analyzes the long-arm statute of the state in which the court is located." *Id.* "Next, the Court determines whether exercising jurisdiction over the defendant in that state comports with the Due Process Clause of the Constitution." *Id.* Due process is satisfied if the court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *bioMérieux, S.A.*, 2018 WL 4647483, at *1.

The Delaware Long Arm Statute ("DLAS") provides when a court may exercise personal jurisdiction over a nonresident defendant. The DLAS states in pertinent part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>> (1) Transacts any business or performs any character of work or service in the State;
>> (2) Contracts to supply services or things in this State;
>> (3) Causes tortious injury in the State by an act or omission in this State;
>> (4) Causes tortious injury in the State or outside of the State by an act or

4

omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

10 *Del. C.* § 3104(c)(1)-(4). Sections 3104(c)(1)-(3) are specific jurisdiction provisions and Section 3104(c)(4) is a general jurisdiction provision. *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. Ct. 1997), *aff'd,* 707 A.2d 765 (Del. 1998).

### C. Failure to State a Claim.

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nalco Co. v. Chem Mod, LLC*, 883 F.3d 1337, 1347 (Fed. Cir. 2018). A plaintiff "need not prove its case at the pleading stage[,]" and the "Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Id.* at 1350. Instead, the complaint must merely "place the potential infringer . . . on notice of what activity . . . is being accused of infringement." *Id*. If "there is enough in the complaint to plausibly allege that each of [multiple defendants] commits at least one type of infringing act," despite allegations of infringement that lump together the multiple defendants, the complaint survives a motion to dismiss. *Bos. Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*, 2020 WL 229993, at *10 (D. Del. Jan. 15, 2020).

### IV.    ARGUMENT

#### A. Tigo's Process And Service of Process Was Proper.

SMA AG alleges that process and service of process was improper because of alleged noncompliance with every formality of the Hauge Convention. (D.I. 35, 6, 11-13.) However, despite these alleged deficiencies, the German Central Authority made no objections to Tigo's request for service, served the Amended Complaint documents on SMA AG, and returned a completed certificate of service. (D.I. 40.) This is *prima facie* evidence that Tigo's service of

5

process complied with the Hague Convention, and SMA AG has failed to show lack of actual notice of the proceedings or that they would be prejudiced by the supposed deficiencies. *Am. Med. Sys.*, 604 F. Supp. 2d at 331; *Res. Trade Fin.*, 2002 WL 1836818, at \*4; *Myrtle*, 2011 WL 446397, at \*2. Indeed, SMA AG entered its appearance and knew enough about the allegations against it to file its present Motion. The lawyers who represent SMA AG are the same lawyers who represent SMA America, who has been actively litigating this case from the beginning. SMA AG's Motion is fundamentally flawed as it fails to even address the German Central Authority's notice of service under the Hague Convention even though SMA AG knew it had been served. Therefore, the Motion should be denied.

### B. This Court Has Personal Jurisdiction Over SMA AG.

#### i. Jurisdiction is Proper under the Delaware Long Arm Statute.

SMA AG is subject to this Court's jurisdiction: **(1)** pursuant to "dual jurisdiction" under subsections (c)(1) and (c)(4); **(2)** pursuant to subsection (c)(4); and **(3)** pursuant to subsections (c)(1) and (c)(3) through SMA America acting as its agent for serving the Delaware market.

##### 1. Jurisdiction Exists Under Delaware's Dual Jurisdiction Theory.

The "dual jurisdiction" theory establishes jurisdiction based on a "stream of commerce" analysis. *Boone*, 724 A.2d 1150 at 1155. Under Delaware law, "dual jurisdiction" exists when (1) the defendant manufacturer demonstrates "an intent or purpose to serve the Delaware market with its product," and (2) that intent or purpose results in the introduction of the product into Delaware and ultimately causes the plaintiff's injury. *Diaz Cardona v. Hitachi Koki Co.*, 2019 WL 449698, at \*4 (Del. Super. Ct. Feb. 5, 2019). "A non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d

365, 373 (D. Del. 2008).

Both factors are satisfied in this case. First, SMA AG, the manufacturer of the Accused Products, has demonstrated an intent to serve the Delaware market with the Accused Products. Tigo alleged that SMA America, a Delaware entity, was created to operate, manage, and direct the global SMA business. (D.I. 16, ¶4 and Ex. 11 at 16 ("SMA Solar Technology AG and its subsidiaries (SMA group) develop, produce and sell systems and solutions for the efficient and sustainable generation, storage and use of energy."), 17 ("As a specialist in system technology, the SMA group develops and globally sells systems and solutions consisting of hardware, software and services . . . .")). Furthermore, SMA describes itself as "a leading global specialist in photovoltaic system technology." (D.I. 16, ¶4 and Ex. 3 at 2). Additionally, the United States is described by SMA AG as a "main market for the SMA group" in 2021, (D.I. 16, Ex. 11 at 53) and SMA AG indicates, "[i]n the U.S. market, we introduced a product update of the Sunny Tripower CORE1 inverter . . . ." (*Id.* at 24). Nowhere in SMA AG's Opening Brief or supporting declaration is there an argument that Delaware was not the intended market. (*See* D.I. 36-37.)  Second, SMA AG's intent or purpose results in the Accused Products being sold in Delaware, and SMA AG does not assert otherwise. *See id.*; D.I. 16, ¶13 ("SMA's Accused Products are imported, distributed, used, sold and/or offered for sale in the United States, including within Delaware.").

In a footnote, SMA AG argues that the "stream of commerce" theory is outdated. This argument has recently been rejected, *Cardona*, 2019 WL 449698, at n.25; *see also UCB, Inc. v. Accord Healthcare, Inc.*, 201 F. Supp. 3d 491, 542 n.33 (D. Del. 2016).

### 2.  Jurisdiction Under Subsection (c)(4) is also Proper.

This Court can also exercise jurisdiction under subsection (c)(4) of the DLAS because SMA AG directly and/or indirectly infringes the Asserted Patents in Delaware. As discussed above, SMA AG "manufactures, uses, offers for sale, sells, and/or imports the [Accused Products]

7

which infringe one or more claims of the Asserted Patents" and "SMA's Accused Products are imported, distributed, used, sold and/or offered for sale in the United States, including within Delaware." (D.I. 16, ¶¶10, 13.) Furthermore, SMA AG actively induces infringement in Delaware "through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing technical guides, product datasheets, demonstrations, advertisements, installation guides, user manuals and other forms of support that induce its distributors, customers, and/or end users to directly infringe the '218 patent." (D.I. 16, ¶¶33 (citing Ex. 9 (an SMA AG document directed to products in the U.S. market)) 48, 65, 82, 99, 117, 134). Thus, Tigo's Complaint pleads jurisdiction over SMA AG under the DLAS.

Additionally, discovery (which is proper to consider in determining personal jurisdiction), confirms that SMA AG specifically targets Delaware with technical guides and product services that result in infringement of the patents-in-suit by SMA's customers and end-users:

- SMA AG manufactures the Accused Products and provides the software and firmware that operates in the U.S. *See, e.g.,* Ex. L at SMAA-001318 (stating that the Sunny Tripower X is "produced in Germany by SMA").

- SMA AG provides user manuals, instruction manuals, and other technical documentation for the Accused Products, which induce infringement in Delaware and are provided on SMA America's website. *See, e.g.*, Ex. I, M-Q; D.I. 16, Ex. 9.

- SMA AG warrants the Accused Products (as indicated on SMA America's website). *See* Ex. R.

- SMA AG is the "Service Provider" for SMA Smart Connected (wireless functionality and SMA Energy app) used throughout the United States, including Delaware. *See* Ex. S.

- SMA AG provides the SMA Service app for servicing its inverters in U.S. Ex. T.

SMA AG's own direct and/or indirect infringement in Delaware clearly meets the subsection (c)(4) requirements of the DLAS. "The injury imposed by patent infringement is analogous to the injury imposed in the more traditional type of tort action in which the Delaware courts have developed the concept of dual jurisdiction." *Power Integrations, Inc.*, 547 F. Supp.

2d at 373. Moreover, SMA AG, as "a leading global specialist in photovoltaic system technology," cannot, and does not, dispute that it ". . . derives substantial revenue from . . . things used or consumed" in Delaware. 10 *Del. C.* § 3104(c)(4).

### 3. SMA AG is Subject to this Court's Jurisdiction Through its Agent, SMA America.

Jurisdiction is also proper under subsections (c)(1) and (c)(3) of the DLAS through SMA America acting as SMA AG's agent for serving the Delaware market. Subsection (c) authorizes jurisdiction over those who engage in activities covered by one or more of statute's subsections either "in person or through an agent." 10 *Del. C.* § 3104(c).

"[A] defendant company may be subject to personal jurisdiction in Delaware by virtue of the court's personal jurisdiction over the defendant company's affiliate" under the agency theory. *Int'l Bus. Machines Corp. v. Rakuten, Inc.*, No. 21-461-GBW, 2022 WL 17848779, at n.4 (D. Del. Dec. 22, 2022) ("*IBM*"). "'[T]he court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction.'" *Id.* "This theory does not treat the parent and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts." *Id.*

Here, Tigo has sufficiently alleged facts supporting an agency relationship between SMA AG and SMA America. (*See, e.g.*, D.I. 16, ¶4 ("SMA AG and its direct and indirect subsidiaries, including defendant SMA America [ ], operate, manage and direct the global SMA business."); ¶8 ("Both by itself and through the direction and control of its subsidiaries, SMA AG has committed acts of direct and indirect patent infringement within Delaware, and elsewhere within the United States"); ¶9 ("SMA AG compensates SMA America for its manufacturing, use, sales, offers for sale, and/or importation of photovoltaic system technology products in the United States. As such, SMA AG has a direct financial interest in SMA America"); ¶11 ("SMA AG directs or controls and

authorizes all activities of SMA America . . . SMA America is authorized to manufacture, use, import, sell, and/or offer for sale the Accused Products on behalf of its controlling parent SMA AG . . . SMA America conducts infringing activities on behalf of SMA AG"); ¶12 ("SMA America operates within SMA AG's global network of sales subsidiaries in North and South America, Europe, Asia, Africa, and the Middle East"); ¶14 ("SMA AG has placed and continues to place the Accused Products into the stream of commerce via established distribution channels comprising at least . . . SMA America")).  These allegations must be taken as true.

Additionally, SMA America's Counterclaims (D.I. 16), document production, and other publicly available documents evidence an agency relationship between the Defendants:

- SMA America's Counterclaims allege there is an agency relationship between it and SMA AG: "Additionally, neither SMA America nor *any other* entities acting in concert with or at the direction of SMA America use the Accused Products . . ."  (D.I. 20, ¶¶147-152).

- SMA America's Counterclaims rely on the purported harm to SMA AG. ((D.I. 20 ¶398 ("Tigo's statements are also likely to cause confusion or mistake, or to deceive others concerning the origin, sponsorship, or approval of SMA America's products and services, or commercial activities of SMA America or *other SMA legal entities* around the world.") (emphasis added); ¶399 ("Tigo further falsely alleged that its complaint against SMA America's SunSpec-compliant products 'includes all SMA legal entities in the U.S. and around the world.' (*Id.*) This statement is demonstrably false, as Tigo's Amended Complaint does not include every SMA legal entity, and the original Complaint that was filed at the time Tigo made these statements only included SMA America."). Paragraph 398 clearly alleges harm to SMA entities other than SMA America (SMA AG), and the alleged harm in Paragraph 399 would only impact entities other than SMA America.  *See IBM*, 2022 WL 17848779, at n.4 ("Rakuten Japan is subject to personal jurisdiction in Delaware because Ebates Performance Marketing appears to be acting on Rakuten Japan's behalf or at its direction when it asserted the permissive counterclaims in this action.").

- SMA AG obtained and currently holds the SunSpec certifications for the Accused Products that form the basis for SMA America's counterclaims. Exs. A-C.

- SMA America's Counterclaims allege that "Tigo released press releases further encouraging industry members to adopt the SunSpec Alliance Rapid Shutdown Specification" and that it relied on this press release to its detriment. (D.I. 20 at ¶168). However, the SMA entity identified in the press release is SMA AG. (*See* D.I. 20, Ex. C at 2 ("Together, SMA and Tigo are minimizing the adoption difficulties presented with any new specifications" says Nick Morbach, Executive Vice President of Residential and Commercial Business Unit at SMA."). Mr. Morbach's LinkedIn Page states that he is an

10

Executive Vice President at SMA AG. Ex. U.

- Other exhibits to SMA America's Counterclaims also refer to SMA AG. (*See* D.I. 20, Ex. A at 1 (referring to "SMA Group" as a "global market leader for solar inverters" and claims that the company is headquartered in Germany, but is represented in 20 countries")).

- SMA AG is the owner of the "SMA Solar Technology" trademark, the of the Accused Products, and the copyright of the SMA America website, all of which are used by SMA America throughout its U.S. website and product materials. Exs. D-I.  SMA America's website contains numerous other references to SMA AG including in the "About SMA" page. Ex. H. *Enzo Life Scis., Inc.*, 2018 WL 4660355, at *4 ("The website also shows GSA is behind the commercialization of the Accused Products in the United States.").

This evidence shows that SMA AG regularly conducts business and engages in conduct within Delaware both for itself and through SMA America. Moreover, Tigo has alleged that the relationship between SMA AG and its subsidiary is more than "mere ownership," but rises to the level of a joint business as these two entities work in concert together for their shared interest of competing in the U.S. market. *Compare bioMérieux, S.A.*, 2018 WL 4647483, at *3 (finding SEC filings that described relationship as a "joint business" and were "probative of the plausibility of the allegations Plaintiffs make as to GSA's role in connection with the alleged infringement.") *with* (D.I. 16, ¶¶7, 8, 11-12); *see also Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) (concluding that sales activities in Delaware are attributable under the agency theory because the two entities operated in concert with each other with respect to drug sales); *Energy Transp. Grp., Inc. v William Demant Holding A/S*, 2008 WL 78748, at *4 (D. Del. Jan. 4, 2008) (holding that a foreign parent was subject to personal jurisdiction even when it "[did] not manufacture, sell, advertise, offer to sell, trade, or import any goods or services in the United States" where it "acted in consort with its subsidiaries to place the accused products in the stream of commerce; it knew that the accused products foreseeably would be sold in the United States . . . ; and [the foreign parent's] conduct and connections with the forum [] were such that it should reasonably have anticipated being brought to court [there].").

####       ii.          Personal Jurisdiction is also Proper Under Federal Rule 4(k)(2).

This Court also has personal jurisdiction over SMA AG under Federal Rule 4(k)(2), which states: "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." "Rule 4(k)(2) thus approximates a federal long-arm statute, allowing district courts to exercise personal jurisdiction even if the defendant's contacts with the forum state would not support jurisdiction under that state's long-arm statute, as long as (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012).

In this case, the three Rule 4(k)(2) requirements are satisfied. First, it is undisputed that Tigo's patent infringement claims arise under federal law. (D.I. 16 at 11-52.)  Second, despite discussing Rule 4(k)(2) in its Opening Brief (D.I. 36 at 19), SMA AG has refused to identify any other state where suit is possible. *Bos. Sci. Corp.*, 2020 WL 229993, at *6 ("if the [foreign] defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)."); *bioMérieux, S.A.*, 2018 WL 4647483, at *3 ("[Defendant] has not met its burden of identifying an alternative forum where Plaintiffs could have brought this suit."). Lastly, as discussed below, this Court's exercise of jurisdiction under Rule 4(k)(2) satisfies due process.

To determine whether specific jurisdiction exists under Rule 4(k)(2), the Court considers whether: "(1) the defendant purposefully directed its activities at residents of the United States, (2) the claim arises out of or relates to the defendant's activities with the United States, and (3) assertion of personal jurisdiction is reasonable and fair." *Bos. Sci. Corp.*, 2020 WL 229993, at *6.

"The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the burden of proving the exercise of jurisdiction would be unreasonable under the third." *Sinox Co. Ltd. v. Yifeng Mfg. Co. Ltd.*, 2023 WL 2769440, at *3 (W.D. Tex. Mar. 22, 2023).

Here, Tigo has alleged sufficient facts demonstrating that SMA AG purposefully directed its activities at residents of the United States and its claims arise out of or relate to SMA's activities within the United States. (*See infra* subsection 3(i)). Further, SMA America's Counterclaims (D.I. 16), document production in this action, and publicly available documents further evidence that SMA AG purposefully directed its activities at the residents of the United States. (*See id.*)

Additionally, Tigo's patent infringement claims arise out of SMA AG's activities in the United States as SMA AG "manufactures, uses, offers for sale, sells, and/or imports the [Accused Products] which infringe one or more claims of the Asserted Patents" and induces infringement in the United States by providing user guides and product manuals for the Accused Products. (D.I. 16, ¶¶10, 33, 48, 65, 82, 99, 117, 134 and Ex. 9.) *See Sinox Co. Ltd.*, 2023 WL 2769440, at *5. As discussed below, this Court's exercise of jurisdiction under Rule 4(k)(2) satisfies due process.

SMA's reliance on *Genzyme Corp. v. Novartis Gene Therapies, Inc.*, 2023 WL 1965090, at *5 (D. Del. Feb. 13, 2023) is misplaced. In *Genzyme*, the Court found no jurisdiction under Rule 4(k)(2) where the only "contacts alleged with Delaware were Defendant's incorporation of subsidiaries, its filing of lawsuits, and its control over its Delaware subsidiaries." *Id.* As discussed *infra*, SMA AG's contacts with Delaware and the United States exceed the contacts in *Genzyme*.

### iii.    Exercising Personal Jurisdiction Comports with Due Process.

#### 1. SMA AG has the Requisite Minimum Contacts with Delaware and the United States.

The exercise of personal jurisdiction does not violate SMA AG's due process rights. "Due process is satisfied if the Court finds the existence of 'minimum contacts' between the non-resident

13

defendant and the forum state, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Enzo Life Scis., Inc.*, 2018 WL 4660355, at *1. "In undertaking this 'minimum contacts' analysis, the Supreme Court has focused on the nature and extent of 'the defendant's relationship to the forum State.'" *IBM*, 2022 WL 17848779, at *2. "The purpose of this requirement is to ensure that 'defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" *Id.*

Tigo has alleged sufficient minimum contacts with both Delaware and the United States to support this Court's exercise of personal jurisdiction over SMA AG. (*See, e.g.*, D.I. 16, ¶5 ("SMA makes, uses, sells, offers for sale, and/or imports photovoltaic system technology products throughout the United States, including in Delaware"); ¶7 ("SMA AG is subject to this Court's [ ] jurisdiction . . . due at least to its substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Delaware residents vicariously through and/or in concert with its intermediaries, distributors, importers, customers and/or subsidiaries."); ¶8 ("Both by itself and through the direction and control of its subsidiaries, SMA AG has committed acts of direct and indirect patent infringement within Delaware, and elsewhere within the United States"); ¶12 ("SMA's Accused Products are imported, distributed, used, sold and/or offered for sale in the United States, including within Delaware."); ¶13 ("Through SMA AG's intermediaries, distributors, importers, customers, and/or subsidiaries maintaining a business presence in, operating in, and/or residing in the United States, including but not limited to SMA America, SMA AG's products, including the Accused Products, are or have been widely distributed, offered for sale, sold and/or used in Delaware."); ¶14 ("SMA AG has placed and

14

continues to place the Accused Products into the stream of commerce via established distribution channels comprising at least . . . SMA America [ ] with the knowledge and/or intent that those products are and/or will be manufactured, imported, used, offered for sale, and sold in the United States and Delaware."); ¶17 ("SMA America has purposefully availed itself of the privileges of conducting business in the United States and, more specifically, in Delaware and this District."); ¶33 ("SMA has made, used, sold, offered to sell, imported, installed and/or have had installed the JMS-F rapid shutdown device and/or SMA inverters  [ ] in Delaware"); ¶48 ("SMA has actively induced, under U.S.C. § 271(b), its distributors and/or customers that use, sell, offer for sale, import, and/or install the Accused Products").

Additionally, SMA America's Counterclaims, document production, and publicly available documents demonstrate SMA AG has sufficient minimum contacts with Delaware and the United States to satisfy the Due Process Clause, *see supra* subsection 1(i):

- SMA AG used to own part of Tigo and had agreement with Tigo to sell its products in United States. Ex. V; D.I. 20, Ex. C.

- SMA AG, not SMA America, is listed by non-party SunSpec Alliance as a "real party-in-interest" in two petitions for *inter partes* review ("IPR") concerning two of the Asserted Patents in this case, U.S. Patent Nos. 8,933,321 and 10,256,770. *See* Exs. W at 56 and X at 73; *bioMérieux, S.A.*, 2018 WL 4647483, at *3 (holding that "Plaintiffs' allegations [including allegations that the defendant was a real party-in-interest in an IPR filing], if taken as true, make out a *prima facie* case of minimum contacts and appear to support a finding that the Court can exercise personal jurisdiction over GSA.").

- SMA AG had its products investigated for compliance with safety standards by a North American UL Certification Program, and SunSpec certification.  Exs. A-C, Y-Z.

- SMA AG warrants the Accused Products, and provides user applications to use the Accused Products in the U.S.  Exs. M-O.

### 2. The Exercise of Personal Jurisdiction over SMA AG does Not Offend Traditional Notions of Fair Play and Substantial Justice.

Furthermore, the exercise of personal jurisdiction over SMA AG is not unreasonable and would not offend traditional notions of fair play and substantial justice. "In assessing whether such

an exercise would be unconstitutional, the Court considers: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *bioMérieux, Inc.*, 2018 WL 4647483, at *4. For this analysis, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court." *Id.*

SMA AG fails to meet its burden. Indeed, SMA AG's Opening Brief (D.I. 36) contains no discussion regarding the aforementioned due process factors, let alone a "compelling case" that jurisdiction over SMA AG is unreasonable. Regardless, these factors weigh in favor in exercising personal jurisdiction over SMA AG. First, SMA AG, who touts itself as "a leading global specialist in photovoltaic system technology," has not alleged that there would be a burden litigating in Delaware—because it cannot. (D.I. 16, Ex. 11 at 3.) Indeed, it has the same counsel as SMA America, and SMA AG has already entered a limited appearance in this action. (D.I. 35); *Enzo Life Scis., Inc.*, 2018 WL 4660355, at *5 (noting that the defendant "is a global company that has subsidiaries across the world, including in Delaware" and that the defendant "shares litigation counsel with [other defendants], which have not challenged personal jurisdiction."). Moreover, SMA AG has filed suit in this District twice before: *SMA Solar Technology AG v. SMA Alliance, Inc.*, No. 17-10-GMS (D. Del.) and *SMA Solar Technology AG v. Sunny Call LLC*, No. 18-309-LPS (D. Del.). Additionally, this Court has recognized that "'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.'" *Bos. Sci. Corp.*, 2020 WL 229993, at *8.

16

Second as discussed above, Delaware has a significant interest in adjudicating this dispute as "Delaware has an interest in discouraging injuries that occur within the state, which extends to patent infringement actions such as the one here." *Energy Transp. Grp., Inc.*, 2008 WL 78748, at *5 (noting that "many of the defendants are subsidiaries of [the foreign defendant], the burden of document and witness production will be minimal to [the foreign defendant]").

The remaining factors also weigh against dismissal. Both Tigo and the interstate judicial system have an important interest in obtaining the most efficient resolution of this controversy. Tigo also filed this litigation against SMA AG's subsidiary, SMA America, who has already filed an answer and counterclaims, including invalidity counterclaims concerning the same patents which are asserted against SMA AG (D.I. 20). It would be grossly inefficient for the case against SMA AG to be dismissed and refiled in another jurisdiction, when the facts and issues relating to SMA AG are so intertwined in the case against SMA America. *See bioMérieux, S.A.*, 2018 WL 4647483, at *4 ("It would be most efficient for the interstate judicial system and in the interests of the substantive policy of enforcement of patent rights for the totality of this case, including Plaintiffs' dispute with GSA, to remain here."). In sum, it is constitutionally reasonable to exercise jurisdiction over SMA AG in this action.

### iv.    In the Alternative, Tigo Should be Permitted to take to Jurisdictional Discovery.

Tigo has made a *prima facie* showing that this Court has jurisdiction over SMA AG under the DLAS and Rule 4(k)(2). However, should the Court find otherwise, Tigo respectfully requests permission to take jurisdictional discovery particularly in light of the facts raised in SMA AG's Wildanger Declaration (D.I. 37-8). "In cases in which *in personam* jurisdiction is challenged, the Third Circuit has held that jurisdictional discovery should be "freely permitted." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 330515, at *9 (D. Del. Jan. 25, 2019) (permitting jurisdictional

17

discovery where the French entity exercised close supervisory control over the day-to-day operations of its US subsidiary). While jurisdictional discovery is not automatically granted, the Third Circuit has held that jurisdictional discovery should be permitted if the plaintiff's jurisdictional allegations are not "clearly frivolous." *Id.* For the reasons above, Tigo's jurisdictional allegations clearly meet this standard as it has provided sufficient evidence to support at least a *prima facie* showing for jurisdictional discovery relating to 1) the agency relationship between SMA AG and SMA America, 2) SMA AG's contacts with United States and Delaware, and 3) any other involvement by SMA AG in the alleged acts of infringement.

### C. Tigo's Complaint Allegations Are Sufficient to Establish a Cause of Action.

SMA AG's argument that Tigo's allegations "lump[] both defendants without pleading sufficient facts to plausibly support that SMA AG either committed a specific infringing act or that SMA America is its agent" are not true (D.I. 35 at 20). As alleged in Tigo's Amended Complaint:

- "This Court has personal jurisdiction over SMA AG, directly and through intermediaries, distributors, importers, customers, and/or subsidiaries, including its U.S. based subsidiaries such as SMA America. Both by itself and through the direction and control of its subsidiaries, *SMA AG has committed acts of direct and indirect patent infringement within Delaware, and elsewhere within the United States*." (D.I. 16, ¶8 (emphasis added).)

- "SMA America is a wholly owned subsidiary of SMA America Holdings, LLC, which is a wholly-owned subsidiary of SMA AG … Upon information and belief, SMA AG compensates SMA America for its manufacturing, use, sales, offers for sale, and/or importation of photovoltaic system technology products in the United States. As such, SMA AG has a direct financial interest in SMA America." (*Id.*, ¶9.)

- "SMA AG and SMA America *each* manufactures, uses, offers for sale, sells, and/or imports the [Accused Products] which infringe one or more claims of the Asserted Patents." (*Id.*, ¶10 (emphasis added).)

- "Upon information and belief, SMA AG *directs or controls and authorizes* all SMA America, including SMA America's manufacturing, using, offering for sale, selling, and/or importing the Accused Products, or other products that incorporate the fundamental technologies covered by the Asserted Patents. *SMA America is authorized to manufacture, use, import, sell, and/or offer for sale the Accused Products on behalf of its controlling parent SMA AG*. Thus, SMA America conducts infringing activities on behalf of SMA AG." (*Id.*, ¶11 (emphasis added).)

18

- "Upon information and belief, SMA America's *corporate presence in the United States* provides SMA AG with substantially all the business advantages that it would otherwise enjoy if it conducted its business there through its own offices or paid agents." (*Id.*, ¶12 (emphasis added).)

- "*Through SMA AG's intermediaries, distributors, importers, customers, and/or subsidiaries* maintaining a business presence in, operating in, and/or residing in the United States, including but not limited to SMA America, *SMA AG's products, including the Accused Products, are or have been widely distributed, offered for sale, sold and/or used in Delaware.*" (*Id.*, ¶13 (emphasis added).)

- "Upon information and belief, SMA AG *has placed and continues to place the Accused Products into the stream of commerce* via established distribution channels comprising at least subsidiaries and distributors, such as SMA America, and customers, *with the knowledge and/or intent that those products are and/or will be manufactured, imported, used, offered for sale, and sold in the United States and Delaware.*" (*Id.*, ¶14 (emphasis added).)

As shown, Tigo has both identified that "each" of SMA AG and SMA America is responsible for infringing acts in the United States and has further alleged a parent-subsidiary relationship between them where SMA AG effectively controls the conduct of SMA America. *See, e.g.*, *Telecomm Innovations, LLC v. Ricoh Company*, *Ltd.*, 966 F. Supp. 2d 390, 393 (D. Del. 2013) (At the pleadings stage, a plaintiff is tasked with alleging sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of the necessary element."). Furthermore, Tigo has specifically alleged that installation guides and user manuals provided by SMA AG induce infringement of the Asserted Claims. (*See, e.g.*, D.I. 20, ¶33 and Ex. 9).

Additionally, *every* Count of the Amended Complaint "repeats and realleges" the foregoing allegations "as if fully set forth at length herein." *Id.* at ¶¶11-45. Thus, Tigo clearly alleges that, at a minimum, SMA AG makes the infringing products and sells them for distribution throughout the U.S., including Delaware, itself or through its indirect subsidiary SMA America. That is more than enough to meet the notice pleading and plausibility requirements of *Iqbal*. *See, e.g.*, *Bos. Sci. Corp.*, 2020 WL 229993 at *10 (denying motion to dismiss where complaint alleged that defendant foreign company manufactured accused products for sale in the United States and its domestic

19

company distributors distributed the accused products, despite allegations in the complaint to "Defendants' collectively").

SMA AG's reliance of *N. Star Innovations, Inc. v. Toshiba Corp.* is misplaced. *See* 2016 WL 7107230 (D. Del. Dec. 6, 2016). In that case, plaintiff's infringement allegations only referred to defendants collectively and there were no plausible allegations that each defendant had committed at least one wrongful act in the United States. *Id.* at *2. In contradistinction, as demonstrated above, Tigo has alleged infringing acts in the United States committed by each of SMA AG and SMA America, including SMA AG's supply of technical information that induces infringement, as well as a parent-subsidiary relationship between the defendants where SMA AG effectively controls the conduct of SMA America. (D.I. 16, ¶¶8-14.) There is no legal basis to dismiss Tigo's Amended Complaint on the basis that Tigo referred to the defendants collectively.

Further, the court in *N. Star Innovations, Inc.*, granted plaintiff leave to amend to properly plead under 12(b)(6) after it dismissed the complaint. *N. Star Innovations, Inc. v. Toshiba Corp.*, No. 16-115-LPS-CJB, 2016 WL 7107230, at *2 (D. Del. Dec. 6, 2016). To the extent the Court is inclined to grant SMA AG's Motion, Tigo respectfully requests that it do so without prejudice and provide Tigo leave to amend as the court did in *N. Star Innovations, Inc*. As demonstrated above, all of the relevant facts are already known to SMA AG, the case is still at the pleadings stage, and amendment would not cause any delay or prejudice to SMA AG or SMA America.

## V.    CONCLUSION

For the foregoing reasons, SMA AG's Motion to Dismiss should be denied. In the alternative, Tigo requests leave to either take jurisdictional discovery or amend its Complaint.

OF COUNSEL:

Nicholas Brown
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1300
brownn@gtlaw.com

Jeffrey R. Colin
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
colinj@gtlaw.com

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
Renée Mosley Delcollo (#6442)
GREENBERG TRAURIG, LLP
222 Delaware Ave., Suite 1600
Wilmington, DE 19801
Telephone: (302) 661-7352
schladweilerb@gtlaw.com
renee.delcollo@gtlaw.com

*Counsel for Plaintiff and Counterclaim
Defendant Tigo Energy Inc.*

Dated: April 20, 2023