**GT** GreenbergTraurig

Benjamin J. Schladweiler
Tel 302.661.7352
Fax 302.661.7163
schladweilerb@gtlaw.com

July 12, 2023

**VIA CM/ECF**

The Honorable Gregory B. Williams
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

> **Re:**    *Tigo Energy Inc. v. SMA Solar Technology America LLC, et al.,*
> **C.A. No. 22-915-GBW**

Dear Judge Williams:

Pursuant to the Court's Oral Order (D.I. 64), Plaintiff Tigo Energy Inc. ("Tigo") hereby moves to compel **(1)** Defendant SMA Solar Technology America LLC ("SMA America") to produce documents held by its German parent, Defendant SMA Solar Technology AG ("SMA AG"); and **(2)** SMA America to supplement its responses to Tigo's Requests for Admission Nos. 1-9.

**1.    SMA America Should Produce Relevant Documents Held By SMA AG**

SMA AG was served pursuant to the Hague Convention on March 2, 2023. (D.I. 40). SMA AG filed a motion to dismiss on April 6, 2023. (D.I. 35). Since then, SMA AG has refused to participate in discovery while its motion is pending even though it has not moved to stay discovery.  This type of self-help is improper since "[d]iscovery routinely proceeds while a motion to dismiss an amended pleading remains pending." *Liqwd, Inc. v. L'Oréal United States, Inc.*, No. 17-14-JFB-SRF, 2019 WL 366223 at *n.3 (D. Del. Jan. 30, 2019).

Regardless, SMA America's relationship with SMA AG demonstrates that SMA America—who has refused to produce documents from SMA AG—has possession, custody and control over relevant documents held by SMA AG. (Ex. 1). "The control analysis for Rule 34 purposes does not require the party to have actual managerial power over the foreign corporation, but rather that there be close coordination between them." *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129-30 (D. Del. 1986). Here, SMA AG develops the Accused Products and provides them to SMA America, its exclusive sales arm for the United States. (*See* D.I. 41 at 2, 8-11). SMA AG also owns and provides: (1) the U.S. warranties on the Accused Products; (2) the app for servicing the Accused Products in U.S.; (3) all technical documentation for the Accused Products in the U.S.; (4) the trademarks for the Accused Products; and (5) the SunSpec certifications for the Accused Products that underlie SMA America's counterclaims XIII – XXI. (D.I. 41 at 8-11; D.I. 20 at 62-90.) SMA AG was also identified as a real-party-in-interest in IPR2021-01286 and IPR2021-01287 which challenged the validity of two of Tigo's asserted patents.

Additionally, in 2016 SMA AG entered into a "strategic partnership" with Tigo, where it purchased a 27% stake in Tigo to acquire "access to the strongly growing market of module-level power electronics" through Tigo's product platform. (Ex. 2.) After learning Tigo's technology, SMA AG sold its stake in Tigo and replaced Tigo with a Chinese supplier. SMA America then used harm that Tigo allegedly caused SMA AG and allegations about the SunSpec standard (whose

The Honorable Gregory B. Williams
July 12, 2023

certifications are held by SMA AG) to bring its counterclaims XIII – XXI. (D.I. 20 at 62-90.)

These facts show that SMA America's relationship with SMA AG is sufficient to satisfy Rule 34. "Where the relationship is thus such that the agent-subsidiary can secure documents of the principal-parent <u>to meet its own business needs</u> and documents helpful <u>for use in the litigation</u>, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 141 (3d Cir. 1988) (emphasis added); *see also Robert Bosch LLC v. Alberee Prods. Inc.*, No. 12-574-LPS, 2017 WL 376270, at *3 (D. Del. Jan. 24, 2017). SMA AG manufactures the Accused Products for distribution in the U.S by SMA America, and provides warranties, technical documentation, and service for the products sold by SMA America. This shows that SMA America can secure documents from SMA AG to meet its business needs. Similarly, SMA America can obtain documents and information from SMA AG where it considers it helpful for use in litigation. For example, SMA America leveraged the SunSpec certifications owned by SMA AG to file counterclaims, and SMA America's Initial Disclosures identify SMA AG employees as likely to have discoverable information that SMA America may use. (Ex. 3 at 3).

This case is similar to *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127 (D. Del. 1986), a patent case where the court granted a motion to compel a U.S. subsidiary (KMC) to produce documents held by its German parent (KMAG). In *Afros*, the German parent developed the products at issue and sold them in the U.S. through its wholly-owned subsidiary. Noting that the German parent would benefit if the U.S. subsidiary won the case, the court found that "[i]f a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession." *Id.* at 131 (citing *Soletanche and Rodio, Inc. v. Brown & Lambrecht Earth Movers, Inc.*, 99 F.R.D. 269, 272 (N.D.Ill. 1983).)

This case is also similar to *Cooper Industries, Inc. v British Aerospace, Inc.* 102 F.R.D. 918, 920 (S.D.N.Y. 1984), where the Court held that a party "cannot be allowed to shield crucial documents from discovery by parties with whom it has dealt in the United States merely by storing them with its affiliate abroad." The defendant in *Cooper Industries* (British Aerospace Inc.) was "the distributor and servicer in the United States of the British affiliate's planes." *Id.* at 919. It was wholly owned by its British parent when the lawsuit was filed. *Id.* The same is true here: SMA America is U.S. distributor and wholly-owned subsidiary of SMA AG, and SMA AG is trying to shield documents from discovery by a party (Tigo) with whom it has dealt in the United States. Accordingly, Tigo respectfully requests the SMA America be ordered to promptly produce relevant documents in the possession, custody, or control of SMA AG.

## 2.      SMA America Should Supplement Its Deficient RFA Responses

SMA America's sixth affirmative defense and contract-related counterclaims are predicated on whether Tigo's asserted claims are "Necessary Claims" to the Rapid Shutdown Specification that was adopted by the SunSpec Alliance, a standard setting organization for the solar energy industry. SMA America alleges that Necessary Claims are those that "(a) cover or directly relate to one or more of the [SunSpec specifications], and (2) reasonably might be necessarily infringed by" those specifications. (D.I. 20, ¶317). SMA America further alleges that Tigo breached the SunSpec Membership Agreement by not offering SMA America a "royalty-free or RAND license" to these allegedly "Necessary Claims." (*Id*., ¶333). Tigo's RFAs 1-9 are straightforward:  they request

The Honorable Gregory B. Williams
July 12, 2023

SMA America to admit or deny whether the patents-in-suit contain Necessary Claims. SMA America's responses are improper because they: 1) fail to admit or deny the RFAs, 2) contain blanket qualifications, and thus violate Rule 36, and 3) contain numerous, unsupported objections. (Ex. 4.)

For instance, RFA No. 1 requests that SMA America "[a]dmit that claim 1 of the '218 patent, claim 1 of the '321 patent, and claim 14 of the '770 patent are Necessary Claims to the Rapid Shutdown Specification." (*Id.* at 4.)  In response, SMA America avoids the request altogether and "admits" only "that *Tigo has argued, alleged, contended, or otherwise suggested* that certain claims, including claim 1 of the '218 patent, claim 1 of the '321 patent, and certain claims of the '770 patent are Necessary Claims to the Rapid Shutdown Specification." (*Id.* at 8 (emphasis added).) But RFA No. 1 does not request Defendant to admit anything about Tigo. While a party can qualify its response to an RFA when "good faith requires," RFA No. 1 requires a mere yes (admit) or no (deny) response. FED. R. CIV. P. 36(a)(4). SMA America's responses are "evasive" and thus "impermissible and must be amended." *Duchesneau v. Cornell Univ.*, 2010 WL 4117753, at *3 (E.D. Pa. Oct. 19, 2010); *see also In re: Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 2164108, at *5 (D.N.J. Apr. 12, 2021) (finding qualifications that articulated respondent's theory of the case did not conform to Rule 36 and ordering responding party to amend its responses to remove improper qualifications). SMA America's responses to RFA Nos. 2-9 are similarly evasive and deficient. (*Id.*)

SMA America's responses also include a laundry list of objections that are unsupported, contrary to other objections in several instances, and are contrary to its own Counterclaim allegations. For example, SMA America objects that the RFAs call for a "legal conclusion." This objection is baseless because SMA America alleges throughout its own counterclaims that Tigo failed to license "Necessary Claims" on royalty free or RAND terms. Moreover, "Necessary Claims" is defined in Tigo's RFAs the same way it is defined by SMA America in the Counterclaims – i.e., "Necessary Claims' shall have the same meaning set forth in the SunSpec Alliance Intellectual Property Rights Policy attached to SMA America's Counterclaims (Ex. K, p. 15-16)." Since SMA America's counterclaims are predicated on Tigo allegedly refusing to license Necessary Claims on a royalty-free or RAND basis, SMA America cannot refuse to answer RFAs asking whether the patents-in-suit contain "Necessary Claims." *See Duchesneau*, 2010 WL 4117753, at *4 ("Requests for Admission are not objectionable even if they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case.") (internal quotations omitted).

SMA America's other boiler-plate objections are equally flawed. Some objections contradict each other – such as "seeking confidential information of one or more third parties" but also "seek[ing] information that is in the public domain;" "cumulative and/or duplicative of other previous discovery requested or served" but also "premature," "shift[ing] a burden," and "call[ing] for a legal conclusion." SMA America then indicates that each response is "[s]ubject to its objections," an approach which numerous courts have found to be improper because it does not fairly respond to the subject of the matter of the requests.  *See, e.g.*, *LKQ Corp. et al. v. Kia Motors Am. Inc.*, No. 21-C-3166, D.I. 185 at 4-8 (N.D. Ill. Mar. 9, 2023) (citing cases) (Ex. 5).

Tigo's RFAs are directly relevant to the issues raised by SMA America. Each of Defendant's responses to RFA Nos. 1-9 is preceded by unsupported objections and a self-serving blanket qualification, and thus fails to answer the requests in the manner required by Rule 36(a)(4).

The Honorable Gregory B. Williams
July 12, 2023

Respectfully,

*/s/ Benjamin J. Schladweiler*

Benjamin J. Schladweiler (#4601)

cc.    All Counsel of Record (via CM/ECF)

4