IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIGO ENERGY INC., Plaintiff, v. SMA SOLAR TECHNOLOGY AMERICA LLS AND SMA SOLAR TECHNOLOGY AG, Defendants. | Civil Action No. 22-915-GBW |

Benjamin J. Schladweiler, Renee Mosley Delcollo, Nicholas Brown, Jeffrey R. Collin, GREENBERG TRAURIG, LLP, Wilmington, Delaware and San Francisco, California

*Counsel for Plaintiff*

Adam W. Poff, Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware; Philip W. Marsh, ARNOLD & PORTER KAYE SCHILER LLP, Palo Alto, California

*Counsel for Defendants*

**MEMORANDUM OPINION**

October 23, 2023
Wilmington, Delaware

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Defendant SMA Solar Technology AG's ("SMA AG") Motion to Dismiss Plaintiff Tigo Energy Inc.'s ("Tigo") Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2), (4), (5), and (6). D.I. 35. For the reasons below, SMA AG's Motion to Dismiss is DENIED.

## I. BACKGROUND

Plaintiff Tigo is a Delaware corporation that manufactures and sells products for the solar industry. D.I. 16 at ¶¶1, 19. Tigo has developed solar products for many years and has obtained several patents related to its products, including U.S. Patent Nos. 8,933,321, 9,584,021, 9,966,848, 10,256,770, and 10,333,405 (collectively, the "Asserted Patents"). *Id.* In July 2022, Tigo filed suit in this Court against SMA AG's Delaware subsidiary, SMA Solar Technology America LLC ("SMA America"), a competitor, alleging that SMA America manufactured and sold products which infringed one or more claims of the Asserted Patents. D.I. 1. According to Tigo, the infringing products include: the JMS-F rapid shutdown device and/or SMA inverters which employ "SunSpec rapid shutdown technology" and are specifically designed and advertised to be used in combination with a rapid shutdown device, including the JMS-F rapid shutdown device; and all other similar SMA rapid shutdown technology products (collectively, the "Accused Products"). *Id.* at ¶¶17-20.

On September 6, 2022, SMA America filed its original counterclaims. D.I. 10. Tigo contends that the original counterclaims contained several allegations and references regarding SMA AG's involvement in the dispute. D.I. 41 at 6 (citing D.I. 10, ¶¶137-142, 370-71, Ex. A, and Ex. C). Therefore, Tigo filed an Amended Complaint (the "Amended Complaint") on

September 30, 2022, naming SMA AG as a defendant.[1] D.I. 16. SMA AG, a German company organized under the laws of Germany and with its principal place of business in Niestatel, Germany, is not registered to do business in Delaware and does not maintain a registered agent for service of process or any offices in Delaware or the United States. D.I. 36 at 10. SMA America is a Delaware company that is wholly owned by SMA America Holdings, LLC, which in turn is a wholly owned subsidiary of SMA AG. *Id.* Tigo alleges that SMA AG and SMA America maintain a close relationship such that the two work in concert to infringe its Asserted Patents. D.I. 41 at 6.

**a. Service of Process**

On September 30, 2022, SMA AG and SMA America's joint counsel informed Tigo that SMA AG would not accept service of the Amended Complaint. *Id.* Tigo initiated service upon SMA AG under the Hague Convention on November 10, 2022. *Id.* Tigo's first Hague request, however, was denied by the German Central Authority. *Id.* at 6-7. Tigo resubmitted its Hague request on February 14, 2023, which was subsequently approved by the German Central Authority. *Id.* The German Central Authority certified that service of process was effectuated upon SMA AG on March 2, 2023. *Id.* (citing D.I. 40). Tigo received the notice of service on April 3, 2023. *Id.* On April 12, 2023, Tigo lodged with the Court the original copy of the Proof of Service upon SMA AG. *Id.*

According to SMA AG, service of the Amended Complaint was received on March 2, 2023. D.I. 36 at 11. However, the documents were not delivered by registered mail or delivered directly to any SMA AG employee. Wildanger Decl., ¶ 21. Instead, they were received outside of SMA AG by an employee of Richter Gebäudedienste GmbH ("Richter"), a separate, private

---

[1] SMA America filed its amended counterclaims (the "Amended Counterclaims"), D.I. 20, on October 14, 2022.

company that is unrelated to SMA AG and is not located in any SMA AG facility, and later forwarded to SMA AG. D.I. 36 at 11-12. SMA AG further contends that the documents did not contain "a summary of the documents to be served" or a complete translation of all English-language documents. *Id.* Rather, the documents that SMA AG received included numerous pages that were out of order, only partly translated, or cut off. *Id.* Still, SMA AG contacted Tigo concerning the executed summons shortly thereafter, and the parties agreed that SMA AG would file an answer or otherwise respond to the Amended Complaint by April 6, 2023. *Id.* at 8.

**b. SMA AG's Motion to Dismiss**

On April 6, 2023, SMA AG filed this Motion to Dismiss, D.I. 35, challenging each claim alleged against it in the Amended Complaint. The Motion to Dismiss raises three distinct grounds for dismissal. D.I. 26 at 8-10. First, SMA AG challenges the Amended Complaint on grounds that Tigo failed to properly serve SMA AG under the Hague Convention. *Id.* at 9. SMA AG contends that the Amended Complaint was not delivered to an SMA AG employee, in violation of German law, and the received documents were out of order, cut off, or only partly translated. *Id.*

Second, SMA AG's Motion to Dismiss seeks dismissal on grounds that this Court cannot exercise personal jurisdiction over SMA AG because SMA AG does not make, use, sell, offer to sell, import, or engage in any other activities related to the Accused Products, or any products, in either Delaware or the United States. *Id.* According to SMA AG, "any activities in the United States related to the Accused Products are carried out by SMA America," which has no overlapping board members or officers with SMA AG and maintains its own local management, sales group, finance department, and marketing department. *Id.* at 11. SMA AG further contends that it does not directly control or authorize the daily activities of SMA America and

does not direct SMA America's sales strategy or customer acquisition strategy related to any of the Accused Products or to any products in general. *Id.* at 10-11.

Finally, the Motion to Dismiss challenges the Amended Complaint on grounds that Tigo failed to assert specific infringement allegations against SMA AG. *Id.* at 9-10. Instead, SMA AG contends that each allegation in the Amended Complaint refers jointly to actions of: (1) SMA AG and SMA America, or (2) SMA AG and "intermediaries, distributors, importers, customers, and/or subsidiaries," or (3) the defined joint term "SMA" that lumps together both defendants. *Id.* at 13.

On April 20, 2023, Tigo filed its response to SMA AG's Motion to Dismiss, D.I. 41, disputing each of SMA AG's grounds for dismissal.

## II. LEGAL STANDARD

### a. Process and Service of Process

Under Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for insufficiency of service of process. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). When the defendant is an international entity, Federal Rule of Civil Procedure 4(f)(1) allows service of process on the defendant through the Hague Convention. Consistent with Article 1 of the Hague Convention, which defines the scope of cases to which it applies, this Court has found that "[t]he Hague Convention applies where civil litigants have cause to transmit judicial or extrajudicial documents internationally." *PATS Aircraft, LLC v. Vedder Munich GmbH*, 197 F. Supp. 3d 663, 672 (D. Del. 2016); *see also* Fed. R. Civ. P. 4(f)(1), Advisory Committee's Notes to the 1993 Amendment ("Use of the [Hague] Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."). "[C]ompliance with the [Hague] Convention is mandatory in all cases to which it

applies." *Volkswagenwerk Aktiengesellschaft v. Schlenk*, 486 U.S. 694, 705 (1988). Because Germany is a signatory to the Hague Convention, service to a German defendant, such as SMA AG, must comply with the Hague Convention. *Philadelphia Gear Corp. v. Am. Pfauter Corp.*, 100 F.R.D. 58, 60 (E.D. Pa. 1983). "[W]here service of process is found to be ineffective, the court has discretion to either to dismiss or to quash service. . . ." *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, 2006 WL 1084093 at *2 (D.N.J. Apr. 24, 2006).

**b. Personal Jurisdiction**

Under Rule 12(b)(2), this Court must dismiss a case if the Court finds that it lacks personal jurisdiction over the defendant. If the defendant moves for dismissal on grounds that the Court lacks personal jurisdiction, the burden is on the plaintiff to show the basis for this Court's jurisdiction. *Thompson v. Roman Cath. Archbishop of Washington*, 735 F. Supp. 2d 121, 126 (D. Del. 2010). Unless the Court has held an evidentiary hearing, the plaintiff need only make a *prima facie* showing, meaning plaintiff must "'establish[ ] with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F. 2d 1217, 1223 (3d Cir. 1992). "In reviewing a motion to dismiss for lack of personal jurisdiction, the Court may consider the pleadings, affidavits, declarations and exhibits;" however, the Court "must construe all disputed facts in the plaintiff's favor." *Bos. Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*, No. CV 18-1869-CFC-CJB, 2020 WL 229993, at *3 (D. Del. Jan. 15, 2020).

Two classifications of personal jurisdiction have been recognized by the Supreme Court of the United States: "general jurisdiction" and "specific jurisdiction." "Specific jurisdiction" encompasses causes of action that "'aris[e] out of or relate[ ] to the defendant's contacts with the forum.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

"General jurisdiction" encompasses complaints arising from dealings that are distinct from the defendant's activities in the state. *Id.* at 924; see also *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). A court may exercise "general jurisdiction over foreign (sister-state or foreign-country) corporations" only when the corporation's "affiliations with the State [in which suit is brought] are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919).

To establish personal jurisdiction, a plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional. *Hardwire*, 2014 WL 5144610, at *6. In the analyzing the statutory prong, courts consider whether the defendant's actions fall within the scope of a state's long-arm statute. *Id.* at *6; *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). In analyzing the constitutional prong, courts determine whether the exercise of jurisdiction comports with the defendant's due process right. *Hardwire, LLC v. Zero Int'l, Inc.*, No. CV 14-54-LPS-CJB, 2014 WL 5144610, at *6 (D. Del. Oct. 14, 2014); *Power Integrations*, 547 F. Supp. 2d at 369. Further, due process is satisfied if the Court finds the existence of "'minimum contacts' between the non-resident defendant and the forum state, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Power Integrations*, 547 F. Supp. 2d at 369.

In assessing a personal jurisdiction question in a patent case, authority from the United States Court of Appeals for the Federal Circuit controls. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Boston Sci. Corp. v. Wall Cardiovascular Techs., LLC*, 647 F. Supp. 2d 358, 364 (D. Del. 2009). In analyzing the statutory prong of personal jurisdiction (i.e., by looking to a state's long-arm statute), the Federal Circuit defers to the law of the relevant state courts and federal courts; however, in assessing the constitutional prong, the Federal Circuit

follows its own law. *Round Rock Rsch. LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 973 (D. Del. 2013); *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 324 (D. Del. 2013). If Rule 4(k)(2) is applicable, the Federal Circuit applies its own law to the entirety of the analysis. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009).

**c. Failure to State a Claim**

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 351 (3d Cir.

2020). The court may consider matters of public record and documents attached to, "integral to[,] or explicitly relied upon in" the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up); *see also Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir. 2020) (same). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

## III. DISCUSSION

The Court is asked to dismiss Tigo's claims against SMA AG on grounds that: (1) Tigo failed to prove that SMA AG was properly served with the Amended Complaint; (2) the Court lacks personal jurisdiction over SMA AG; and (3) the Amended Complaint fails to state a claim against SMA AG under Rule 12(b)(6). D.I. 36. For the reasons discussed below, the Court disagrees with each of SMA AG's grounds for dismissal. Therefore, SMA AG's Motion to Dismiss is DENIED in its entirety.

### a. SMA AG was properly served pursuant to the Hague Convention.

Under Article 2 of the Convention, each Hague Convention signatory country designates a Central Authority for accepting service and permits litigants to serve documents on the Central Authority, which then forwards the documents to the intended recipient. 20 U.S.T. 362, T.I.A.S. 6638, Art. 2. "[T]he Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed." *Id.*, Art. 5. "If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request." *Conformis, Inc. v. Zimmer Biomet Holdings, Inc.*, No. CV 19-1528-RGA, 2022 WL

1909386, at *1–2 (D. Del. June 3, 2022). If, however, the Central Authority accepts the request without objection, this Court will typically assume that the served documents complied with the Hague Convention. *Id.*

This Court's holding in *Conformis* is illustrative. *Id.* Defendant in *Conformis*, like SMA AG, moved to dismiss the complaint on grounds that the pleadings, which were served on defendant by the Switzerland Central Authority, failed to comply with the Hague Convention. *Id.* at *2. In particular, defendant claimed that the documents were insufficient "due to the[ir] use of a web-linked index rather than attachments, the lack of translated exhibits, [and] the fact that the linked exhibits differed slightly from the exhibits docketed" in the case. *Id.* The court disagreed. In denying defendant's argument that the Hague Convention required full translations, the court noted that defendant provided no evidence that a partial translation was insufficient and, absent any objection from the Switzerland Central Authority, the court would assume that partially translated documents "complied with the requirements of the Hague Convention." *Id.* Additionally, the court found that none of defendant's three grounds were sufficient to convince the court to grant dismissal because, ultimately, defendant had actual notice of the complaint. *Id.* at n. 3. According to the court, "the Hague Convention should be read together with Rule 4, which stresses **actual notice**, rather than strict formalism." *Id.* (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301 (2d Cir. 2005)) (emphasis added). The court found that defendant did not lack actual notice of the lawsuit where it was aware that the complaint and its exhibits were available to defendant "upon request." *Id.*

Similarly, here, SMA AG contends that one reason service was insufficient was because the documents served did not comply with the Hague Convention. D.I. 44 at 5-6. Specifically, SMA AG argues that Tigo failed to include a summary of the documents and did not translate

every document to German. *Id.* Tigo contends that service was proper because the German Central Authority accepted the documents without any objection and returned a completed certificate of service (the "Certificate") evidencing that SMA AG had been served. D.I. 41 at 9-10. The Court agrees that a lack of objection from the German Central Authority is evidence that the documents did in fact comply with the Hague Convention. *Id.* Had the German Central Authority found that the documents failed to meet requirements of the Convention, they would have rejected Tigo's application, as they did with Tigo's first application. *Id.*

Moreover, SMA AG admits that the Amended Complaint was "partially translated" and cites no support for its claim that a full translation is required. *Id.* The cases cited by SMA AG do not call, as it claims, for a "different conclusion and result." D.I. 44 at 5-6. In *PATS Aircraft, LLC v. Vedder Munich GmbH*, this Court held that service was ineffective where plaintiff admitted that *no* part of the complaint was translated into German. 197 F. Supp. 3d 663, 673 (D. Del. 2016) ("It seems to be conceded by PATS, however, that it has not had anything translated into German. Instead, it argues, in so many words, that the German translation requirement is superfluous because [defendant's] principal . . . is 'fluent in ... English.'"). The court found that the served documents failed to comply with the Convention because the Convention called for at least some translation. *Id.* This is distinguishable from this matter where the Court is asked to judge the sufficiency of a partial translation. This Court finds, as it has before, that minus any objection from the German Central Authority, the Court will not hold that a partial translation or a missing summary page renders service ineffective under the Hague Convention. *See Conformis, Inc.*, 2022 WL 1909386, at *1–2.

The Court is also not convinced that dismissal is appropriate because "the documents were delivered to an employee of another company and not SMA AG." D.I. 36 at 11-12. Tigo

presented the Court with a Certificate from the German Central Authority confirming that the documents were properly served. D.I. 41 at 9-10. SMA AG's allegation that service was made to an unrelated company is therefore not evidence that Tigo failed to provide SMA AG with proper service, but rather that the German Central Authority did not comply with its service requirements. *See Lumber Liquidators Leasing, LLC v. Sequoia Floorings, Inc.*, No. 3:13-CV-313, 2014 WL 272401, at *7 (E.D. Va. Jan. 24, 2014). "[W]here the plaintiff made a good faith attempt to comply with the Convention" by, for instance, relying on the Central Authority, the Court will not dismiss the claim on the basis of a technical defect unless defendant can show that it lacked actual notice. *See Burda Media, Inc.*, 417 F.3d at 301.

Here, despite any of the alleged deficiencies that SMA AG raised about the served documents, SMA AG's Motion to Dismiss ultimately fails because SMA AG cannot claim that it lacked actual notice. Like the defendant in *Conformis*, SMA AG understood that the Amended Complaint and any of its exhibits were available to it upon request to Tigo. 2022 WL 1909386, at n. 3. In fact, Tigo asked that SMA AG waive service, and SMA AG's counsel declined. D.I. 41 at 6. Tellingly, following service by the German Central Authority, SMA AG admits that it did in fact contact Tigo "concerning the executed summons" and, by doing so, was able to prepare the Motion to Dismiss in response shortly thereafter. D.I. 36 at 8. Because the Court finds that SMA AG had actual notice, the Motion to Dismiss on grounds that service was insufficient is denied.

**b. The Court may exercise personal jurisdiction against SMA AG.**

Tigo contends that this Court has personal jurisdiction over SMA AG because: (1) jurisdiction is proper under Delaware's long-arm statute; (2) jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2); and (3) exercising personal jurisdiction over SMA AG comports

with due process. D.I. 41 at 10. In support of its claim that this Court can exercise personal jurisdiction pursuant to Delaware's long-arm statute, Tigo alleges that jurisdiction is proper under both the "stream of commerce" theory and the "agency" theory. *Id.* at 10-15. In resolving this dispute, the Court must accept Tigo's allegations as true and must resolve all factual disputes in Tigo's favor. *Bos. Sci. Corp.*, 2020 WL 229993, at *3. Because the Court finds that personal jurisdiction is satisfied under either the stream of commerce theory or the agency theory, the Court will not address Tigo's Rule 4(k)(2) arguments. SMA AG's Motion to Dismiss on grounds that the Court lacks personal jurisdiction is denied.

**i. Stream of Commerce Theory:**

Under Delaware's long-arm statute "a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> [or] ...
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State[.]"

Del Code Ann. tit. 10, § 3104(c). "The stream of commerce theory is based on at least a partial satisfaction of Section 3104(c)(1) and (c)(4) of Delaware's long-arm statute; it does not demand the full satisfaction of any individual subsection of the statute, as it only requires that portions of Sections 3104(c)(1) and (c)(4) be satisfied." *3G Licensing, S.A. v. Lenovo Grp. Ltd.*, 2019 WL 3974539, at *4 (D. Del. Aug. 22, 2019), *report and recommendation adopted*, No. CV 17-84-LPS, 2019 WL 7635823 (D. Del. Sept. 19, 2019). To raise the theory, a plaintiff must show: (1) that

defendant had an intent or purpose to serve the Delaware market and (2) that the intent or purpose results in the introduction of the product into Delaware and ultimately causes the plaintiff's injury. *Diaz Cardona v. Hitachi Koki Co.*, 2019 WL 449698, at *4 (Del. Super. Ct. Feb. 5, 2019). In analyzing the stream of commerce theory, "it is not important that the [non-resident] itself act in Delaware." *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, No. CV 15-634-SLR-SRF, 2016 WL 4413140, at *6 (D. Del. Aug. 17, 2016), *report and recommendation adopted*, No. CV 15-634-SLR/SRF, 2016 WL 5723653 (D. Del. Sept. 29, 2016). Rather, "the 'touchstone' of stream-of-commerce theory relates to the first prong of this analysis, the 'intent and purpose to serve the Delaware market.'" *Eastman Chem. Co. v. AlphaPet Inc.*, C.A. No.09-971-LPS-CJB, 2011 WL 6004079, at *16 (D. Del. Nov. 4, 2011) (internal quotation marks omitted). "A non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Power Integrations*, 547 F. Supp. 2d at 373.

While the ownership of a Delaware subsidiary is "not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent," the Court finds that Tigo has asserted more than mere ownership. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 645 (D. Del. 2006) (internal quotation marks omitted). In its Amended Complaint, Tigo alleges that SMA AG arranged for the introduction of infringing products "[t]hrough [it's] intermediaries, distributors, importers, customers, and/or subsidiaries maintaining a business presence in, operating in, and/or residing in the United States, including but not limited to SMA America." D.I. 16 at ¶13. As to SMA America in particular, Tigo alleges that SMA America was

created by SMA AG for the purpose of conducting its infringing activities within the U.S. and is compensated by SMA AG for doing so. *Id.* at ¶¶9-14.

As further evidence of SMA AG's concerted effort to target the U.S. market through SMA America, Tigo highlights several statements made by SMA AG that refer to the collective actions of the SMA group in the U.S. D.I. 41 at 11. For instance, disclosures by SMA AG note that "SMA Solar Technology AG and its subsidiaries (SMA group) develop, produce and sell systems and solutions for the efficient and sustainable generation, storage and use of energy." *Id.* (citing D.I. 16, Ex. 11 at 16). Furthermore, in a 2021 statement, SMA AG described the U.S. market as a "main market for the SMA group" and indicated that, "[i]n the U.S. market, we introduced a product update of the Sunny Tripower CORE1 inverter . . . ." *Id.* (citing D.I. 16 at ¶4, Ex. 11 at 53).

SMA AG responds that the statements highlighted by Tigo that reference the SMA group, cannot be attributed to SMA AG individually. D.I. 36 at 12-13. Yet, SMA AG does not contend that "SMA group" refers to its subsidiaries alone. Rather, it admits that "SMA group" collectively "includes SMA AG and its subsidiaries, such as SMA America." *Id.* As this Court has noted in prior cases, collective statements regarding the infringing actions of a "group" may be used as evidence that a defendant included in the group intended to engage in the referenced infringing actions. *3G Licensing*, 2019 WL 3974539, at *5; *Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 679 (D. Del. 2014) ("Plaintiff claims that as recently as 2011, Alberee and Saver described themselves as 'Alberee Products, Inc. d/b/a Saver Automotive Products, Inc.,' and that together they were a 'large supplier of wiper blades in the United States.' . . . Considered as a whole, the record reflects that Alberee's intended targeting of the Delaware market resulted in the introduction of the accused product into Delaware."). "[A]bsent further clarification in the

record," this Court has found that collective statements are sufficient to make a *prima facie* showing of personal jurisdiction. *3G Licensing*, 2019 WL 3974539, at *5.

In *3G Licensing*, this Court found that the record contained such clarifying evidence where a declaration from defendant's principal noted that defendant "'has no operations [and] does not develop, manufacture, sell, distribute, or export any products' *at all*." *Id.* (emphasis added). The principal clarified that defendant was nothing more than a holding company. *Id.* In light of this evidence, this Court held that the "record clearly indicates that [defendant] does not intend to (nor, in fact, does it) place the accused products into the United States (and Delaware) markets [and thus] could not be subject to personal jurisdiction based on the stream of commerce theory." *Id.*

Here, SMA AG submits a declaration from Johanna Wildanger (the "Wildanger Declaration"), SMA AG's Head of Corporate Intellectual Property, noting that "SMA AG does not make, use, sell, or offer to sell any products in the United States." Wildanger Decl., ¶12. According to Wildanger, it is SMA America that "generally imports SMA products into the United States." *Id.* at ¶13. Critically, the Wildanger Declaration does not allege that SMA AG manufactures no infringing products at all. Indeed, the declaration supports Tigo's allegation that SMA AG manufactures infringing products *abroad* with the intent that SMA America direct the sales of the infringing products. D.I. 41 at 11. Therefore, this case is distinguishable from *3G Licensing*, as SMA AG cannot claim that it is merely a holding company that does not and could not have intended to place accused products into the United States. *See 3G Licensing*, 2019 WL 3974539, at *5. Additionally, despite the Wildanger Declaration, the record indicates that SMA AG has ongoing involvement in SMA America's sale of accused products in the U.S. by, among other things, manufacturing software and firmware for accused products (D.I. 41, Ex. L at SMAA-001318); providing user manuals, instruction manuals, and other technical documents used to

induce infringement (D.I. 41, Ex. I, M-Q; D.I. 16, Ex. 9); and ensuring the accused products, as indicated on SMA America's website (D.I. 41, Ex. R).

Taken as a whole, this evidence is sufficient to establish a *prima facie* case for personal jurisdiction. That is, to the extent that SMA AG manufactures accused products abroad with the intent that its American subsidiary import and sell the products in the United States, and therefore Delaware, personal jurisdiction based on the stream of commerce theory is proper.[2]

Finally, Tigo has provided sufficient evidence that SMA AG's intent or purpose resulted in the introduction of infringing product into Delaware. Tigo alleges, that "SMA's Accused Products are imported, distributed, used, sold and/or offered for sale in the United States, including within Delaware." D.I. 16, ¶13. SMA AG does not challenge Tigo's assertion that infringing products were sold in Delaware. Because SMA AG has presented no evidence that Delaware was somehow excluded from these alleged U.S. marketing efforts, the Court finds that Tigo has met its burden to prove both elements of the stream of commerce theory.

**ii. Agency Theory:**

"A parent company is not liable for the actions of its subsidiary solely because of the parent-subsidiary relationship." *StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, No. CV 13-490, 2013 WL 6002850, at *3 (D. Del. Nov. 13, 2013). Under the agency theory, however, the Court "may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction." *Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp.

---

[2] *See Bos. Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*, No. CV 18-1869-CFC-CJB, 2020 WL 229993, at *7 (D. Del. Jan. 15, 2020), *report and recommendation adopted*, No. CV 18-1869-CFC/CJB, 2020 WL 564935 (D. Del. Feb. 5, 2020) ("Plaintiffs have sufficiently explained why the instant claims of patent infringement arise out of or relate to Micro-Tech Nanjing's activities with the United States. Plaintiffs' infringement claims are premised on, inter alia, the importation and sale in the United States of accused products—accused products that Micro-Tech Nanjing allegedly (a) manufactures overseas and (b) then makes efforts to ensure are ultimately sold in the United States by entities in its distribution network, including the other two [subsidiary] Defendants.").

2d 338, 348 (D. Del. 2009). Under this theory, the Court "does not treat the parent and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts." *Int'l Bus. Machines Corp. v. Rakuten, Inc.*, No. 21-461-GBW, 2022 WL 17848779, at n.4 (D. Del. Dec. 22, 2022). The agency theory does not require evidence of "total domination" by the parent company and is not based on alter ego principals. *Brit. Telecommunications PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019). Finally, "[t]he agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' [that] operate in concert with each other." *Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 679 (D. Del. 2014)

SMA AG argues that Tigo has failed to prove that an agency relationship exists between SMA America and SMA AG. D.I. 36 at 21. In support of this argument, SMA AG rightly notes that this Court considers several factors when deciding whether an agency relationship is present, including: 'the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business.'" *Id.* (citing *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 505 (D. Del. 2017)). SMA AG argues, and the Court does not disagree, that some or all of the factors are missing here. *Id.* Yet, the Court's analysis is in no way limited to the factors highlighted by SMA AG. *See Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 679 (D. Del. 2014). Rather, the factors are intended to reveal whether the companies are "'two arms of the same business group,' operating in concert with each other," and the Court's analysis ultimately seeks to determine whether the relationship between the two is "nearer than arm's length." *Cephalon, Inc.*, 629 F. Supp. 2d at 348.

Here, Tigo has alleged sufficient evidence of an agency relationship to survive dismissal. As noted by Tigo, SMA AG made statements that referred to SMA AG, SMA America, and other SMA subsidiaries collectively. D.I. 41 at 11. Further, Tigo presented evidence that SMA AG warrants SMA America's infringing products and provides instruction manuals for the infringing products to SMA America's U.S. customers. *Id.* at 12. Finally, while the Wildanger Declaration notes that "SMA AG does not directly control or authorize *every* activity undertaken by SMA America," Tigo is not required to prove total domination. *See* Wildanger Decl., ¶16. The Court's inquiry must focus on SMA AG's role with respect to the infringing products, and nothing in the Wildanger Declaration dispels Tigo's allegations that SMA AG authorizes or controls some aspects of SMA America's U.S. sales activity. Neither does the Wildanger Declaration address Tigo's claims that SMA AG compensates SMA America for its sale of infringing products. D.I. 16 at ¶9.

Moreover, while SMA AG argues that only SMA America is implicated by the infringing activities alleged by Tigo, Tigo has raised several facts that challenge this assertion. D.I. 41 at 6. Tigo contends, for instance, that several of SMA America's counterclaims implicate SMA AG as "SMA AG obtained and holds the SunSpec certifications for the Accused Products that form the basis for [these] counterclaims." *Id.* The Court agrees. SMA America alleges in its Amended Counterclaims that Tigo made representations to the SunSpec Alliance and its members suggesting to the members that "Tigo consented to the use of any potentially infringing technologies in connection with the adoption of the Rapid Shutdown Specification." D.I. 20 at 20-21. If, as Tigo alleges, SMA AG is the SunSpec certificate holder and the SunSpec member, the Court agrees that SMA America's counterclaims attempt to raise purported harms suffered by SMA AG. *See International Business Machines Corp. v. Rakuten, Inc.*, 2022 WL 17848779, at *5 (D. Del. Dec.

22, 2022) (finding that a foreign parent company that "used [its Delaware subsidiary] to assert permissive counterclaims in this District [] thus, purposefully availed itself to this District."); D.I. 41 at 14. Tigo further notes that SMA AG is listed by SunSpec Alliance as a "real party-in-interest" in two petitions for *inter partes* review concerning two of the Asserted Patents. D.I. 41 at 19. Finally, Tigo highlights that SMA AG owns both the "SMA Solar Technology" trademark and the copyright of the SMA America website. *Id.* at 14-15. When considered as a whole and accepted as true, as the Court must at this stage of the pleadings, this evidence is sufficient to support a claim that SMA AG and SMA America maintain a "nearer than arm's length relationship." Thus, the Court finds that Tigo has made a *prima facie* claim that SMA America acts as SMA AG's agent with respect to certain infringing activities.

**iii. Due Process:**

Having determined that jurisdiction is proper under either the Stream of Commerce theory or the agency theory, the Court must next consider whether subjecting SMA AG to this Court's jurisdiction would frustrate the principles of fair play and substantial justice required by the Due Process of the Fourteenth Amendment.

*a. Minimum Contacts:*

In determining whether the exercise of personal jurisdiction over a foreign entity comports with Due Process, "it is essential in each case" that the Court first find evidence of minimum contact between the foreign defendant and the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "The purpose of this requirement is to ensure that 'defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" *IBM*, 2022 WL 17848779, at *2 (internal citation omitted).

In *Beverly Hills* Fans, the Federal Circuit found that minimum contact was sufficiently pled where "[t]he allegations are that defendants purposefully shipped the accused [products] into [the forum state] through an established distribution channel [and] [t]he cause of action for patent infringement is alleged to arise out of these activities." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). According to the Federal Circuit, "no more is usually required to establish specific jurisdiction." *Id.* Here, Tigo has alleged that SMA AG "[b]oth by itself and through the direction and control of its subsidiaries," caused infringing products to be sold in Delaware. D.I. 16 at ¶8. Like the plaintiff in *Beverly Hills* Fan, Tigo contends that SMA AG purposefully shipped infringing products into the U.S. and Delaware through an established distribution channel using its subsidiary. *See, e.g.*, *Id.* at ¶14. Because Tigo alleges that its infringement actions arise out of these activities, Tigo has pled sufficient minimum contact with this state.

*b. Fair Play and Substantial Justice:*

Even where this Court finds that minimum contact exists between the defendant and the forum state, the exercise of jurisdiction may be denied if exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 477. In assessing whether such an exercise would be unfair and unjust, the Court considers: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *Id.* The burden is on Defendant to prove that the Court's exercise of jurisdiction would be unreasonable or unfair under the circumstances. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015).

Tigo contends that SMA AG has failed to meet this burden, and the Court agrees. D.I. 41 at 19-21. To allege that jurisdiction is improper, SMA AG must show that it would be significantly burdened if the case was adjudicated before this Court. *Id.* SMA AG contends that it has made such a showing "since SMA AG has never sold any products in Delaware and does not engage in business in Delaware." D.I. 44 at 11. While the Court recognizes that, as a German Company with no business, sales, or addresses in Delaware, SMA AG would suffer some hardship by having to litigate in Delaware, the Court is not convinced that the burden on SMA AG is significant. As noted above, Tigo alleges that SMA AG, acting in concert with its wholly owned Delaware subsidiary, took affirmative steps to direct its products into the U.S. and Delaware markets. *See supra* subsection (b)(i). When allegations of purposeful actions toward this state are alleged through a stream of commerce theory, this Court has found that its exercise of jurisdiction satisfies Due Process. *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, No. C.A. 05-422 GMS, 2008 WL 78748, at *4 (D. Del. Jan. 4, 2008). Additionally, "'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome,'" and as SMA AG shares litigation counsel with SMA America, the Court does not believe that SMA AG can claim complete ignorance of this Court's judicial system merely because it is a foreign entity. *Beverly Hills Fan Co.*, 21 F.3d at 1569.

The Court similarly finds that any burden suffered by SMA AG is outweighed by this Court's interest in adjudicating this dispute. As Tigo noted, "'Delaware has an interest in discouraging injuries that occur within the state, which extends to patent infringement actions such as the one here.'" D.I. 41 at 21 (citing *Energy Transp. Grp., Inc.*, 2008 WL 78748, at *5). SMA AG contends that Delaware does not have a significant interest in adjudicating this dispute since SMA America has not sold any products in Delaware since 2019. D.I. 44 at 11. Yet, SMA AG

"has not . . . sought a change of venue or identified any other forum in the United States where personal jurisdiction would be appropriate." *Enzo Life Scis., Inc. v. Hologic Inc.*, No. CV 16-894-LPS-CJB, 2018 WL 4660355, at *5 (D. Del. Sept. 26, 2018) (internal quotation marks omitted). Finally, the Court agrees with Tigo that dismissing the case against SMA AG while maintaining overlapping claims against SMA America would result in significant inefficiencies. D.I, 41 at 21. That is, Tigo's claims against both Defendants are so intertwined that "[i]t would be most efficient for the interstate judicial system and in the interests of the substantive policy of enforcement of patent rights for the totality of this case . . . to remain here." *bioMérieux, S.A. v. Hologic, Inc.*, 2018 WL 4647483, at *4 (D. Del. Sept. 26, 2018). Therefore, the Court finds that it is constitutionally reasonable to exercise jurisdiction over SMA AG in this action.

**c. Tigo has sufficiently pled infringement against SMA AG.**

According to SMA AG, the Amended Complaint "fails to state a claim against SMA AG under Federal Rule of Civil Procedure 12(b)(6), because each of Tigo's allegations lumps together both defendants. D.I. 36 at 26. In doing so, SMA AG contends, Tigo failed to plead sufficient facts to plausibly support (1) that SMA America is its agent or (2) that SMA AG committed a specific infringing act. *Id.* The Court disagrees.

*i. Tigo has pled sufficient facts to support application of an Agency Theory.*

"A parent company is not liable for the actions of its subsidiary solely because of the parent-subsidiary relationship. Liability requires piercing the corporate veil, which may be permissible under either of two distinct tests: (1) the alter ego test, or (2) the agency test." *StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, No. CV 13-490-RGA-MPT, 2013 WL 6002850, at *3 (D. Del. Nov. 13, 2013), *as amended* (Nov. 14, 2013). Tigo contends that it has stated a viable claim against SMA AG under the latter theory, the agency test. "A vital prerequisite to imposing

liability based upon customary agency principles is finding a close connection between the relationship of the two corporations and the cause of action." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D. Del. 1989). "Under this theory, only the conduct shown to be instigated by the parent may be attributed to the parent." *StrikeForce Techs., Inc.*, 2013 WL 6002850, at *5. Finally, the requisite "evidence of agency required at the pleading stage is minimal," and the evidence of corporate closeness required to survive dismissal need not "be sufficient to succeed on agency theory at later stages in litigation." *Brit. Telecommunications PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 410 (D. Del. 2019).

According to SMA AG, Tigo fails to plead an agency theory because the Amended Complaint includes only allegations "lumping both defendants without pleading sufficient facts to plausibly support that . . . SMA America is its agent." D.I. 36 at 17. For the reasons already stated in this opinion, the Court disagrees. *See supra* subsection (b)(ii). Because only minimal evidence of agency is required in the pleading stage, SMA America's Motion to Dismiss on grounds that Tigo has not pled an agency theory is DENIED.

*ii. Tigo has alleged specific infringing acts taken by SMA AG.*

Additionally, the Court finds that dismissal is not warranted because the Amended Complaint alleges individual infringing actions against each Defendant. While SMA AG contends that this matter is like *N. Star Innovations*, the Court finds that the two cases are distinguishable. D.I. 44 at 14 (citing *N. Star Innovations, Inc. v. Toshiba Corp.*, 2016 WL 7107230 (D. Del. Dec. 6, 2016)). In *N. Star Innovations*, this Court found that dismissal was warranted where the complaint alleged infringement against two companies, and "nowhere in any part of the [complaint] [was] it clearly alleged that either Defendant takes part in any specific infringing act. *N. Star Innovations.*, 2016 WL 7107230, at *2). The Court noted that the complaint needed to

assert "at least one particular type of infringing act," and it failed to do so. *Id.* Here, on the other hand, the Amended Complaint alleges that "SMA AG and SMA America each manufactures, uses, offers for sale, sells, and/or imports the [Accused Products] which infringe one or more claims of the Asserted Patents." D.I. 16 at ¶10. The Amended Complaint refers to "SMA AG's products" and clarifies that these products made by SMA AG "includ[e] the Accused Products, [and] are or have been widely distributed, offered for sale, sold and/or used in Delaware."[3] *Id.* at ¶13.

Despite other claims in the Amended Complaint that refer to SMA AG and SMA America jointly as "SMA," dismissal is not warranted merely because a complaint refers to two or more defendants collectively. Rather, the complaint must exclusively refer to the two defendants as one unit for the Court to find that claims of infringement have not been made against each specific defendant. *See N. Star Innovations.*, 2016 WL 7107230, at *2. Because the Court finds that Tigo sufficiently raises at least one type of infringing act against SMA AG by referring to the infringing products as SMA AG products, SMA AG's motion to dismiss for failure to state a claim is DENIED.

## IV. CONCLUSION

For the above reasons, SMA AG's Motion to Dismiss is DENIED. The Court will issue an Order consistent with this Memorandum Opinion.

[3] In addition to asserting claims that SMA AG manufactured infringing products, the Amended Complaint asserts that SMA AG induced infringement of the Asserted Patents by providing users with installation guides and manuals. D.I. 16, ¶¶8-14. Therefore, the Court finds that Tigo has pled a claim of induced infringement against SMA AG alone.