IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIGO ENERGY INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-915-GBW |
| SMA SOLAR TECHNOLOGY AMERICA LLC and SMA SOLAR TECHNOLOGY AG, | |
| Defendants. | |

## MEMORANDUM ORDER

Currently pending now before the Court is Defendant SMA Solar Technology America, LLC's ("SMA America") Motion to Stay Pending *Inter Partes* Review and Federal Circuit Review of the Asserted Patents (the "Motion"). D.I. 74. The Court has reviewed the parties' briefing, D.I. 75; D.I. 77; D.I. 79, and all related briefing, D.I. 109; D.I. 112; D.I. 114; D.I. 118. For the reasons explained below, the Motion is DENIED.

Plaintiff Tigo Energy Inc. ("Tigo") alleges that Defendants SMA America and SMA Solar Technology AG ("SMA AG" and collectively with SMA America, "Defendants") infringe the following five patents by selling and manufacturing photovoltaic safety systems: U.S. Patent Nos. 8,933,321 (the "'321 patent"), 9,584,021 (the "'021 patent"), 9,966,848 (the "'848 patent"), 10,256,770 (the "'770 patent"), and 10,333,405 (the "'405 patent") (collectively the "Asserted Patents").[1] D.I. 16 ¶¶ 19–25, 33. The Asserted Patents can be divided into two groups. The first group includes the '321, '770 and '218 patents and relates to "rapid shutdown," a safety feature that can be added to solar technology to enable a solar system to be shut down quickly at need in

---

[1] Tigo no longer asserts infringement of U.S. Patent No. 8,823,218 (the "'218 patent"). D. I. 77 at 2.

1

emergency situations. In January 2023, the PTAB upheld the claims of the '321 and '770 patents following *Inter Partes* Review ("IPR") of each patent. IPR2021-01286, Paper 27; IPR2021-01287, Paper 27. The PTAB's decisions were appealed on March 20, 2023. The second group, the '021, '848, and '405 patents, relates to "preloader" circuit technology in solar panels that prevents the "false start" problem, which can occur when the solar panels are initially powered in the early mornings. SMA America filed petitions for IPR of the '021, '405, and '848 patents on April 24, June 27, and July 11, 2023, respectively.

On July 25, 2023, SMA America filed a Motion to Stay litigation pending institution of IPR of the '021, '848, and '405 patents and Defendants' appeal of the PTAB's decisions upholding the claims of the '321 and '770 patents to the Federal Circuit. D.I. 75 at 1. On February 21, 2024, SMA America provided its latest update to the Court regarding the status of its petitions for IPR and noted that IPR was instituted for the '021 patent and otherwise denied for the '405 and '848 patents. D.I. 118. According to SMA America, rehearing was requested as to the decisions denying institution of the '405 and the '848 patents. *Id.* at 1. As of the date of this Order, however, the Court has received no further update regarding the status of Defendants' rehearing requests. Therefore, for purposes of resolving the Motion, the Court assumes that only the '021 patent will be subject to the PTAB's review.

"Motions to stay invoke the broad discretionary powers of the court." *Cellectis S.A. v. Precision Biosciences*, 883 F. Supp. 2d 526, 532 (D. Del. 2012). Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will "simplify the issues for trial"; (2) the status of the litigation, particularly "whether discovery is complete and a trial date has been set"; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *Am. Axle & Mfg.*,

*Inc. v. Neapco Holdings LLC*, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021). The parties agree that these three factors apply here. D.I. 75 at 4; D.I. 77 at 5. Each factor is considered in turn below.

### 1. SMA America's Motion to Stay All Pending Patent Claims

The first stay factor considers whether a stay would simplify the issues for trial. According to SMA America, this factor favors granting a stay because "the outcome of the IPRs" will narrow SMA America's invalidity arguments. D.I. 75 at 6-7. Additionally, SMA America argues that "the Federal Circuit appeals challenging the asserted claims of the '321 and '770 patents are poised to simplify key claim construction issues in this litigation." *Id.* at 7. Tigo, on the other hand, maintains that a stay would not simplify the litigation because SMA AG has not joined SMA America's motion to stay. D.I. 77 at 8. Tigo also notes that the Federal Circuit appeal relates to two of the Asserted Patents, the '321 and '770 patents, which the "PTAB heard full briefing and argument on ... [and] upheld the validity of Tigo's asserted claims." *Id.* at 8-9. Further, Tigo contends that "SMA America's assertion of nine non-patent counterclaims, as well as numerous assertions of §§101 and 112 arguments on every patent-in-suit, weighs against granting a stay on this factor as none of those issues will be addressed by the PTAB or Federal Circuit." *Id.*

Having reviewed the parties' arguments, the Court finds that a stay of the proceedings would not simplify the issues for trial. As to the '321 and '770 patent claims, the PTAB's determinations upholding the '321 and '770 patents was appealed on March 20, 2023. Given the new trial date in December 2025, it is highly unlikely that the Federal Circuit's decision on the pending appeal would not be issued before the Court's judgment in this case. In fact, as of the date of this Opinion, the appeal has been pending for over one year and, as Tigo notes, the Federal

Circuit typically renders decisions within fifteen months of filing. D.I. 77 at 4. Thus, the Court should have the benefit of the Federal Circuit's decision well before the start of trial.

Similarly, staying the '021, '848 and '405 patent claims would not simplify the trial given that the PTAB instituted only SMA America's petition for IPR of the '021 patent and otherwise denied SMA America's petitions to institute review of the '848 and '405 patents. SMA America maintains that the Court should nevertheless stay the three patent claims because "the '021, '848 and '405 patents are all closely related and based on the same specification." D.I. 75 at 9. Thus, according to SMA America, "institution of an IPR against even one of these patents would simplify the issues as to all three patents." *Id.*; *see also Jenam Tech, LLC v. Google LLC*, 2022 WL 20275184, at *3 (N.D. Cal. Mar. 28, 2022) ("Overlapping issues between the reexamined and non-reexamined patents also weigh in favor of a stay."). While the Court agrees that the PTAB's IPR of the '021 patent may simplify Tigo's claims asserting infringement of the '848 and '405 patents, the PTAB's review will have no effect on four non-patent counterclaims asserted by SMA America, including breach of contract, tortious interference with business relations, and unfair competition, each of which touch on issues related to Tigo's alleged involvement in the SunSpec Alliance. D.I. 124 at 92-117. Because SMA America alleges counterclaims that would proceed to trial regardless of the outcome of the PTAB's review of the '021 patent, the trial would not be greatly simplified by a stay pending resolution of the '021 patent's IPR proceedings. *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, Civil Action No. 12–1461–LPS–CJB, 2014 WL 3819458, at *3 (D. Del. Jan. 15, 2014) (noting that, "[t]he more that the scope of the issues to be resolved during the litigation exceeds the scope of the issues that can be examined during IPR, the greater this cuts against a finding that an IPR proceeding will lead to great simplification of the

issues at play" in the litigation). Given the above, the first stay factor weighs against granting a stay.

The second stay factor—whether a stay would prejudice Tigo—also weighs against granting SMA America's motion to stay. As both parties note, SMA America and Tigo are direct competitors. D.I. 75 at 10, D.I. 77 at 4; *see also Neste Oil OYJ v. Dynamic Fuels, LLC*, No. CV 12-1744-GMS, 2013 WL 3353984, at *3 (D. Del. July 2, 2013) ("Courts are hesitant to grant a stay in a matter where the parties are direct competitors."). Despite their status as direct competitors, SMA America contends that a stay will not prejudice Tigo because "multiple active firms" compete against Tigo and SMA America in the "solar inverter market." D.I. 75 at 10-11. While the Court agrees that, typically, the presence of other players in the market reduces the risk of prejudice,[2] in this matter, SMA America fails to show that other players compete with SMA America and Tigo in the market for rapid shutdown units. Instead, SMA America contends that the other players compete with SMA America and Tigo in the "solar inverter market." *Id.* In its cross-complaint, however, SMA America accuses Tigo of anti-competitive behavior aimed at "increase[ing] its market share by excluding or delaying competitors from entering the market for Rapid Shutdown Specification." D.I. 124 ¶ 535. According to SMA America, Tigo engaged in anti-competitive conduct against Defendants because "SMA America is a competitive threat to Tigo." *Id.* ¶ 554. Tigo counters that SMA America infringed the Asserted Patents by, among other things, "replac[ing] Tigo's rapid-shutdown product with its own." D.I. 77 at 10. Given these assertions by both parties, the Court finds that the relevant market is the market for manufacturing Rapid Shutdown technology, not the "solar inverter market." *Id.* Because SMA America failed

---

[2] *See id.* (citing *Neste Oil OYJ*, 2013 WL 3353984 at *3).

5

to show that other players compete with SMA America in the market for rapid shutdown units, the Court cannot find that the risk of prejudice is reduced by the presence of other market competitors.

Moreover, granting the stay would prejudice Tigo by further delaying resolution of this litigation. Tigo filed claims against SMA America for infringement in July 2022, and the parties originally agreed to hold trial in October 2024. D.I. 57. To accommodate a subsequent request by the parties to extend the trial deadlines, however, the Court rescheduled the trial, as permitted by the Court's schedule, to commence on December 2, 2025. D.I. 117. Staying this matter would only further delay the resolution of this litigation by relinquishing the December 2025 trial. Further, if the PTAB upholds the '021 patent, relinquishing the December 2025 trial date at this time would prove unwise. Because the parties are direct competitors, "there is a reasonable chance that [this] delay in adjudicating the alleged infringement will have outsized consequences to [Tigo], including the potential for loss of market share and an erosion of goodwill" in the market for rapid-shutdown product. *TwinStrand Biosciences, Inc.*, 2023 WL 2563179, at *4 (citing SenoRx, Inc., 2013 WL 144255, at *8). Accordingly, the second factor weighs against SMA America's motion to stay.

The last stay factor—the stage of the proceedings—also weighs against SMA America's request to stay the proceedings. While several deadlines were extended to correspond with the change in the trial date, this extension came only after the Court held a *Markman* hearing and construed several disputed terms. *See generally* D.I. 98. Similarly, the parties have already engaged in numerous months of discovery and have subpoenaed testimony from several witnesses, including witnesses located outside of the United States. *See* D.I. 115 at 1. "[B]ecause fact discovery is substantially underway and claim construction briefing is complete," the Court finds

that staying the action would not conserve the Court's time or resources. *See Invensas Corp. v. Samsung Elecs. Co.*, No. CV 17-1363-MN-SRF, 2018 WL 4762957, at *4 (D. Del. Oct. 2, 2018).

### 2. Consideration of Partial Stay of the '021, '848 and '405 Patent Claims

As a final note, the Court must briefly address the parties' suggestion in briefing that, "if the case proceeds on the '321 and '770 patents, Tigo would consent to severing and staying the other four patents." D.I. 77 at 1. When this concession was made, SMA America's IPR petitions for the preloader patents had yet to be instituted. Thus, the Court deferred ruling on SMA America's motion to stay until the parties received "a decision from the PTAB regarding institution or denial of *inter partes* review on any of the four pending applications and/or decision from the Federal Circuit on the appeal of the PTAB's patentability decisions on the '321 and '770 patents." D.I. 82. Since then, only SMA America's petition for IPR of the '021 patent was instituted. D.I. 114 at 1.

While the Court could, as the parties suggest, stay the '021, '848 and '405 patent claims and allow the case to continue as to the '321 and '770 patents claims, such a partial stay would require the Court to hold two trials to adjudicate Tigo's claims against SMA America. As other courts have noted, "[s]uch an approach would create significant inefficiencies that would more than offset any simplification gained through the IPR process." *Polaris Powerled Techs., LLC v. Samsung Elecs. Am., Inc.*, No. 2:22-CV-00469-JRG, 2024 WL 1149223, at *5 (E.D. Tex. Mar. 15, 2024) (internal citations omitted); *Bos. Sci. Corp. v. Edwards Lifesciences Corp.*, No. CV 16-275-JFB-SRF, 2018 WL 1891403, at *2 (D. Del. Apr. 20, 2018). This is especially true here given the high probability that the PTAB will issue a decision on the IPR of the '021 patent before the start of trial in December 2025. Thus, a partial stay of the '021, '848 and '405 patent claims is unnecessary to simplify issues for trial. Finally, for the same reasons discussed above, the Court

finds that the current stage of the proceedings and the risk of prejudice to Tigo both weigh against granting a partial stay. *See supra* at 5–6. Accordingly, the Court declines to grant a partial stay.

\*\*\*

Therefore, at Wilmington this 16th day of April, 2024, **IT IS HEREBY ORDERED** that SMA America's Motion to Stay Pending *Inter Partes* Review and Federal Circuit Review of the Asserted Patents (D.I. 74) is **DENIED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE